Mrs. Lois E. WILSON, Plaintiff and Appellant,

v.

FAMILY SERVICES DIVISION, REGION TWO, State of Utah, Defendant and Respondent.

No. 14317.

Supreme Court of Utah.

Aug. 24, 1976.

---

3. 59 Cal.2d 503, 30 Cal.Rptr. 538, 381 P.2d 394, 407 (1963).

Lyle J. Barnes of Barnes & Wilson, Kaysville, for plaintiff and appellant.

Vernon B. Romney, Atty. Gen., Paul M. Tinker, Asst. Atty. Gen., Salt Lake City, for defendant and respondent.

CROCKETT, Justice:

Plaintiff instituted this proceeding in the district court to restrain defendant Family Services from placing her grandchild out for adoption until she could have a hearing on her own fitness as custodian and/or adoptive parent. A temporary restraining order, and an order to show cause why it should not be made permanent, were issued. Upon the hearing thereon, the court vacated the restraining order and refused to grant the plaintiff a hearing on her petition. Its order includes the recital that ". . . grandparents have no enforceable legal rights to the custody of a grandchild, and have no more standing than a third-party stranger to contest the placement of the subject child."

The subject of controversy here is Stephen Lacey whose mother (plaintiff's daughter) had been charged in the Juvenile Court of Weber County with neglect and abuse of the child; and in connection with that proceeding, had agreed to surrender and disclaim rights to his custody. Pursuant thereto, the juvenile court ordered that Stephen be placed with the defendant Family Services for the purpose of placing him for adoption. The further facts asserted by petitioner are that she immediately contacted the defendant Family Services about getting the custody of Stephen, but her request was rejected. She thereupon had her attorney file the instant proceeding with the district court, alleging that she "is informed and believes that within a very few days . . . said child will be placed with unknown persons" for adoption. She

also requested to have him in her custody so that at the time of hearing on the adoption she will qualify as an adoptive parent by having had him in her custody for the required six-months; and asked that the defendant agency be restrained from so placing the child until she had an opportunity to be heard on her contentions with respect to her grandchild and her application to adopt him. It was upon the basis of these allegations that the court issued the temporary restraining order above referred to, which it later vacated.

Plaintiff protests the unfairness of thus permitting the defendant agency to make a unilateral decision to so place her grandchild with persons unknown to her, without giving her any information about them, thus depriving her of any knowledge, contact or grandparent relationship with her grandchild, without any possibility of review or testing the reasonableness of its decision, and without according her a hearing upon the merits of her petition.

The problem here confronted, which is of such vital concern to the whole future life of a little child, is certainly one of the most delicate and perplexing that courts are required to deal with. On the one hand, it is highly desirable that there be practical procedures which will facilitate the placement of such children in suitable adoptive homes with the numerous benefits therefrom. These include the always paramount objective of providing for the best possible home environment and adjustment in life for the child; and the incidental but nevertheless important objective, of relieving the public of the expense and responsibility for his welfare. This is especially true when it is realized that maladjustments and antisocial behavior patterns tend to be continually recurring cycles, generation after generation, until that cycle is interrupted, and hopefully terminated, by placing the child in a proper environment

where a wholesome adjustment to the problems of life can be achieved. The other side of the coin is the desirability of attempting to achieve that same objective by recognizing the natural love and affection which exists within families in order to encourage and preserve their unity and stability, which is so essential to the good order of society.

In pursuance of the objective stated above, we appreciate the fact that when a child is without parents and is placed with a social agency, there are enough difficulties involved in making a proper placement that those burdens should not be added to unnecessarily. Nor should there be any unnecessary hazards which will cause fear, and therefore reluctance, on the part of adoptive parents. If the law recognized any right of custody beyond the parents, the number of potential protestants, such as grandparents, brothers and sisters of the parents (aunts and uncles of the child), or immediate relatives, would create a situation so fraught with possibilities for trouble as to make the placement of children difficult if not entirely impractical, a result which we agree should be avoided.

Because of the considerations just stated, we agree with certain basic propositions advocated by the defendant: That the only persons having any actually vested interest in the custody of a child cognizable by the law are the parents; and that consequently, they are the only ones who have a right to notice and a hearing in court proceedings to determine custody;[1] that once there has been a proper proceeding and adjudication depriving them of custody, and the child is placed with a proper agency such as the defendant Family Services, the latter then has the responsibility and authority to safeguard the welfare of the child, including the placement in a home for that purpose; and that the agency is ordinarily not required

---

1. See Sec. 78–30–4, which provides "Consent to adoption—a legitimate child cannot be adopted without the consent of its parents, if living, nor an illegitimate child without the consent of its mother, if living . . . ."; and Sec. 78–30–8 provides for the execution of such consent.

to obtain a court order to make such placement.

■ In considering the contentions of the petitioner in the light of the foregoing, it is also well to have in mind that this proceeding is one in equity for dual reasons: First, because it seeks a restraining order upon the defendant. Second, and much more important, because it involves the custody and welfare of a child. It is sometimes said that such a proceeding is equitable in the highest degree.[2] For this reason we are concerned both with the applicable law and with the facts and circumstances of the particular case,[3] including the important one that the petitioner is the grandmother of the child in question.

■ Even though it be true that relatives other than the parents have no·such rights in a child as to require service of process in such a proceeding, nor to have an adjudication of the severance of any asserted right, under some circumstances, the matter of family relationship may be a factor which should be given due and serious consideration. It is according to the laws of nature and human experience that such immediate relatives, often referred to as next of kin, have some legitimate concern for children of the family and interest in their welfare. The imminent authority Tiffany, in speaking of natural guardians, states in his text:

On the death of the father, guardianship by nature passes to the mother, and, on her death, to the grandfather [4] or

grandmother or any other person who is next of kin. [Citing a number of cases] [4]

To this same import is the case of *Lamar v. Micou*[5] wherein Mr. Justice Gray, speaking for the United States Supreme Court on the question whether orphaned children acquired a domicile in Georgia by going there to live with their grandmother, stated:

Although some books speak only of the father, or, in case of his death, the mother, as guardian by nature; 1 Bl. Com. 461; 2 Kent Com. 219; it is clear that the grandfather or grandmother, when the next of kin, is such a guardian.

Another case dealing with the right of a grandparent is. *Commonwealth ex rel. Stevens v. Shannon*[6] wherein the court said:

The affection of a grandparent can safely be said to be no less in depth than parental affection.

This idea is supported generally by the texts and authorities.[7] Though not decisive of the issue involved, in the case of *In re Cooper*[8] this court took occasion to observe that in "custody matters, all things else being equal, near relatives should generally be given preference over nonrelatives; . . .."

■ From what has been said above it should be apparent that although the parents of a child are the only ones who have a direct and vested right to his custody, further recognition of family relationships and reciprocal interests and responsibilities is so interwoven in the fabric of the law [9]

2. *Walton v. Coffman*, 110 Utah 1, 169 P.2d 97; *In re Adoption of D_____*, 122 Utah 1525, 252 P.2d 223.

3. See Art. VIII, Sec. 9, Utah Const.; *Wiese v. Wiese*, 24 Utah 2d 236, 469 P.2d 504.

4. Tiffany on Domestic Relations (3d ed.) 395, § 148.

5. 115 U.S. 218, 5 S.Ct. 857, 29 L.Ed. 94.

6. 107 Pa.Super. 557, 164 A. 352, 354. That where both mother and father are found to be unfit to have custody of a child it may properly be awarded to grandparent see also

*Overstreet v. Overstreet* (La.App.), 244 So. 2d 313; as to grandparent's right of visitation being recognized, see *Weichman v. Weichman*, 50 Wis.2d 731, 184 N.W.2d 882.

7. 39 C.J.S. Guardian and Ward § 3 p. 10; 39 Am.Jur.2d, Guardian and Ward § 8, p. 15.

8. 17 Utah 2d 296, 410 P.2d 475.

9. Cf. e. g., Sec. 74–4–5(6) which provides for succession, where no immediate family, to next of kin, and Sec. 75–13–13 which deals with preferred rights to letters of guardianship of minors, including relatives.

that the logical consequence thereof is that next of kin, such as this grandmother, do have some dormant or inchoate right or interest in the custody and welfare of children who become parentless, so that they may come forward and assert their claim; and that even though this does not rise to the dignity of an absolute legal right, it is a legitimate interest of such a nature that it should strongly commend itself to serious consideration by the administrative agency; and that failing, by the court, concerned with the welfare of the child, at least to the extent of according her a hearing and determination on the merits of her petition. This is especially so, and consistent with the purposes we have discussed herein, where this grandmother came forward promptly to express her love and concern for her grandchild and offered to provide him with a home and support.

The result of refusing the requested hearing is that the defendant agency through its staff makes a decision of the greatest importance to this child on the basis of its own investigation, evaluation and determination, which, vis-a-vis this petitioner, is final and unassailable because it is not subject to attack or review. It therefore could be ever so unreasonable and arbitrary, or inimical to the interests of the child and society, without any means of review or redress. This is contrary to the whole structure of our legal system based on due process of law, one of whose most fundamental purposes is to curb and control despotic and arbitrary power.[10] It is firmly established that when it is charged that the actions of an administrative agency are capricious and arbitrary there should be access to the courts to test that charge.[11]

Under the particular facts shown herein, considered in the light of the principles of law we have discussed, it is our conclusion that it was an abuse of discretion to refuse

10. 16 Am.Jur.2d—Constitutional Law, § 550.

11. See *Kent Club v. Toronto*, 6 Utah 2d 67, 305 P.2d 870; *Gianforte v. Board of License*,

to continue the restraining order in effect until the petitioner was accorded a hearing on her petition. The restraining order should be reinstated until that is done. No costs awarded.

HENRIOD, C. J., and ELLETT, TUCKETT and MAUGHAN, JJ., concur.

190 Md. 492, 58 A.2d 902; *City of Wewoka v. Rose Lawn Dairy*, 202 Okl. 286, 212 P.2d 1056.