## Adoption of E.M.T., Jr.

*Wm. J. Scott, Jr.*, for petitioner.
*E. Craig Kalemjian*, for respondent agency.

WOOD, *J.*, May 21, 1980—We have before us the petition of the natural maternal grandmother of E.M.T., Jr. (the child) asking that we permit her to intervene in the matter of the petition of Chester County Children and Youth Services (CCC&YS) to terminate the rights of the child's natural parents. Petitioner further seeks custody of the child, or visitation rights in the alternative.

Initially we note that the Adoption Act of July 24, 1970, P.L. 620, 1 P.S. § 101 et seq., does not provide for notice to grandparents in involuntary termination proceedings.[1] Section 312 of the act provides that a petition to terminate parental rights may be filed by either parent (when termination is sought with respect to the other parent) or an agency, or an individual having custody or standing in loco parentis to the child. Moreover, petitioners in such actions must first file a report of intention to adopt unless petitioner is an "agency" as defined by the act: Adoption of Stone Minors, 58 D. & C. 2d 759 (1973). This legislative plan facilitates adoption in that it allows agencies to proceed with termination actions when grounds exist, without the necessity of involving prospective adoptive parents in these proceedings, In re Burns, 474 Pa. 615, 379 A. 2d 535 (1977), and dispenses with the need for parental consent to an adoption when the parent has failed to meet the continuing needs of the child: In re B.E., 474 Pa. 139, 377 A. 2d 153 (1977). To allow the intervention of close relatives into termination proceedings would mean that instead of a narrowly described hearing designed, in the interests of the adoptee, to separate the issues of whether the natural parents have abandoned a relationship from the

1. Only parents are entitled to notice and hearing under the act: 1 P.S. §313.

factually different issue of whether a new set of proposed parents have qualified to assume a relationship, the court would have before it a sort of general inquiry into the question of which of various sets of competing parents and nonparents are best equipped to care for a child's needs.

Nevertheless, petitioner must be permitted to intervene if "the determination of such action may affect any legally enforceable interest of such person whether or not he may be bound by a judgment in the action." Pa. R. C. P. 2327(4). We have found no authority for the position that involuntary termination proceedings pursuant to the Adoption Act would determine any legally enforceable right of grandparents in their grandchild.[2] Petitioner calls our attention to a decision by the Supreme Court of Utah, Wilson v. Family Services Division, Region Two, 554 P. 2d 227 (1976). That case, however, holds that parents are the only persons recognized by law as having any actual vested interest in the custody of the child. The court states at 554 P. 2d 230, ". . . that relatives other than the parents have no such rights in a child as to require service of process in such a proceeding, *nor to have an adjudication of the severance of any asserted right.* . . ." (Emphasis supplied.) Finding neither statutory nor case law authority giving petitioner a "legally enforceable interest," we hold that a grandparent has no standing to intervene as a party in a hearing called to consider whether to terminate parental rights.

Despite our holding, we conclude that petitioner's family relationship with the child should be given due and serious consideration in this case. We agree

2. Indeed, we remain reluctant to concede that any person, even a parent, has "rights" in any other person.

with petitioner that a parental termination hearing should be bifurcated in the sense that the hearing court should consider the best interest of the child after it has made a threshold finding that the statutory requirements for termination have been met: Adoption of R.I., 468 Pa. 287, 361 A. 2d 294 (1976). Moreover, it is well established that the paramount consideration in child custody proceedings is the best interest and welfare of the child: In re Davis, 237 Pa. Superior Ct. 516, 352 A. 2d 78 (1975). It is therefore clear that if the hearing court should determine that grounds for termination exist, the second "phase" of the parental termination proceeding will confront the court with the same issue as the grandmother's petition for custody: the best interest of the child. Relatives of a child have some legitimate concern for children of their immediate family even if they don't have a "legally enforceable interest." Thus it is our opinion that petitioner is entitled to a hearing on her petition for custody before we may consider placing the child with CCC&YS for the purpose of adoption: Wilson, supra. As the same issue is involved in both proceedings, petitioner should be permitted to offer evidence at the termination hearing on the issue of whether or not it is in the best interest of the child that she be awarded custody. At the conclusion of such hearing, the court will be in a position to rule on both the question of terminating the parental relationship as well as the question of making an award of custody which comports with the child's best interest.

This procedure will not only settle these matters expeditiously in accordance with the legislative scheme established by the Adoption Act but will recognize the interest of grandparents in their grandchildren's welfare.

## ORDER

And now, May 21, 1980, after argument and consideration of petitioner's memorandum of law, respondent's motion to quash is sustained.

It is further ordered that petitioner's petition for custody be joined with and heard at the same time as the termination proceeding.