**Ruby L. KASPER and David Kasper, Plaintiffs and Appellants,**

v.

**Jennifer NORDFELT, Defendant and Appellee.**

**No. 900290–CA.**

Court of Appeals of Utah.

July 25, 1991.

Michael J. Petro (argued), Young & Kester, Springville, for plaintiffs and appellants.

David M. McConkie (argued), and Merrill F. Nelson, Kirton, McConkie & Poelman, Salt Lake City, for defendant and appellee.

Before GARFF, GREENWOOD and JACKSON, JJ.

OPINION

GARFF, Judge:

Appellants, Ruby L. Kasper and David Kasper appeal from a summary judgment dismissing their complaint to intervene in an adoption and, alternatively, to receive grandparent visitation rights.

Because this is a summary judgment, we recite the facts from the statement of un-

disputed facts. Where there is a discrepancy or where we cite additional facts, we view the facts in the light most favorable to the losing party.

On September 26, 1989, appellee, Jennifer Nordfelt, an unmarried minor, gave birth to a child. The child's father, David V. Kasper was killed in an automobile accident on June 17, 1989. He and Nordfelt never married, but planned to marry on or about July 22, 1989. David V. Kasper's parents, Ruby L. Kasper and David Kasper, filed a "Complaint for Grandparent Visitation Rights" the day the child was born. This complaint included the following: "The plaintiffs wish to either adopt said child, or to exercise their grandparent rights of visitation. They believe it is in the minor child's best interest to adopt said child and/or to have extensive visitation rights with said child."

The day after giving birth, Nordfelt executed an affidavit and release relinquishing her child to LDS Social Services, a child placement agency licensed by the state of Utah to receive children for placement or adoption. She placed the child with the agency in order to have it placed for a confidential and anonymous adoption. In this release, Nordfelt consented "to the legal adoption of [her child] by those persons whom the said LDS Social Services, may, in their discretion, designate and approve to be adopting parents who are able to furnish said child with a proper name, home and care." Nordfelt requested that the adoption be anonymous and confidential because she believed that such an adoption served the best interests of herself and her child. The release was notarized, but it has not yet been approved by a judge, presumably because, due to this appeal, the adoption has not yet been finalized.

After the Utah Department of Health verified that no one had registered an acknowledgment of paternity with the state, the agency immediately placed the child with prospective adoptive parents, with whom the child has since resided.

The trial court concluded that the child was not parentless so as to give rise to a recognizable interest in the Kaspers to permit their intervention in the adoption proceedings, or to permit grandparent visitation rights. The court then dismissed, with prejudice, the Kaspers' complaint.

The issues on appeal include whether the court erred in concluding, as a matter of law, that the Kaspers had no right to intervene in the adoption proceedings, and no right to grandparent visitation.

In reviewing a summary judgment, we view the facts and inferences to be drawn therefrom in the light most favorable to the losing party, and affirm only where it appears there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Ehlers & Ehlers v. Carbon County*, 805 P.2d 789, 791 (Utah App.1991).

■ The applicable law at the time of the mother's relinquishment provided that, "[a] child cannot be adopted without the consent of each living parent." Utah Code Ann. § 78–30–4(1) (1987).[1] The law also provided that a parent who is a minor child can consent to an adoption or can release the custody of a child to an adoption agency. Utah Code Ann. § 78–30–4(2) (1987). Where "the parent or parents whose consent would otherwise be required" relinquishes a child to such an agency, the agency receives the right to consent to the child's adoption. Utah Code Ann. § 78–30–4(1) (1987). For the adoption to be finalized, the prospective adoptive parents, the child, and, in this case, the agency empowered to consent to the adoption, must appear and the court must determine that the interests of the child will be promoted by the adoption. Utah Code Ann. § 78–30–8 and –9 (1987).

The Kaspers assert that, under *Wilson v. Family Servs. Div., Region Two*, 554 P.2d 227 (Utah 1976), grandparents have a "dormant" or "inchoate right or interest" in the custody of a parentless child, and that since

**1.** This version was repealed, effective April 23, 1990, and replaced with Utah Code Ann. § 78–30–4.1 (Supp.1991).

the child's mother had relinquished her child to the agency, the child was thus parentless. In *Wilson,* the mother of the child was charged with neglect and abuse and agreed to disclaim rights to custody. The juvenile court permanently terminated her parental rights and the child was placed with family services for adoption. This procedure immediately "permanently terminates the legal parent-child relationship and all the rights and duties, including residual parental rights and duties, of the parent or parents involved." Utah Code Ann. § 78–3a–48 (1987). We distinguish *Wilson* from the present case because here, there has been no permanent deprivation of parental rights by a court, but rather a voluntary relinquishment by a parent to a licensed agency. Further, the mother's parental rights have not been judicially terminated because the child has not as yet been adopted. Both case law and the adoption statute provide that a birth parent's rights and duties do not dissolve until the time of the adoption. *Fauver v. Hansen,* 803 P.2d 1275, 1277–78 (Utah App.1990); *Riding v. Riding,* 8 Utah 2d 136, 329 P.2d 878, 880–81 (Utah 1958); Utah Code Ann. § 78–30–11 (Supp.1991). *See also Davis v. Davis,* 708 P.2d 1102, 1112 (Okla.1985) ("The replacement of the lost parent is effected *in the very same proceeding* that produces the severance of the old parental bond.") (Emphasis in original.) Therefore, the child is not "parentless" as that term is used by the court in *Wilson,* and thus the Kaspers have no inchoate right to custody.

Although the *Wilson* court opined that under some circumstances family relationships might be of such a nature that their application to adopt should be given consideration, *Wilson,* 554 P.2d at 230, we do not find such a circumstance here, where the only living parent of the child deliberately and thoughtfully decided to place the child for adoption with an agency, and not with the paternal grandparents. We think the integrity of such a decision, involving a critically important parental right, must be preserved, not only for the stability and well-being of the child, but also for the protection of the adoption process and its

purposes. As the *Wilson* court pointed out:

> If the law recognized any right of custody beyond the parents, the number of potential protestants, such as grandparents, brothers and sisters of the parents (aunts and uncles of the child), or immediate relatives, would create a situation so fraught with possibilities for trouble as to make the placement of children difficult if not entirely impractical, a result which we agree should be avoided.

554 P.2d at 229.

At the time of relinquishment, the child had but one living parent, the mother, who had sole custody and control. Therefore, when the mother relinquished the child to the adoption agency, the agency became the only entity entitled to consent to any adoption.

■ The Kaspers also argue that they have the right to bring their own petition to adopt the child, which they purported to do in the prayer of their complaint for visitation. However, the Kaspers have made no showing that they have received the consent of the agency to adopt the child. Indeed, both parties agree that the agency has selected other adoptive parents for the child. Because appellants do not have the consent of the agency, their petition is meritless.

Thus, the court did not err in determining that the Kaspers have no right to intervene in the child's adoption, nor did the court err in dismissing the Kaspers' petition to adopt.

## VISITATION

■ We next consider whether the court erred in dismissing the Kaspers' petition for visitation pursuant to Utah Code Ann. § 30–5–1 et seq. (1989). Under this grandparent visitation statute, the relevant definition of grandparents is those "whose child, who is the parent of the grandchildren, is dead." Utah Code Ann. § 30–5–1(2) (1989). The section provides that the court may grant grandparents reasonable rights of visitation if it is in the best interests of the child.

Here, the undisputed facts are that appellants are the parents of David V. Kasper, deceased, and that he is the father of the child. Appellants are thus grandparents of the child under the statute.[2]

While there is no Utah case construing the grandparent visitation statute, we agree with those cases from other jurisdictions with similar statutes which uniformly hold that these statutes do not apply where the rights of natural parents are terminated and the grandchildren are adopted by nonrelatives. *Matter of W.E.G.*, 710 P.2d 410, 414–15 (Alaska 1985) (grandparent visitation statute not intended to indirectly liberalize the strictly worded adoption statute); *Mitchell v. Doe*, 41 Wash.App. 846, 706 P.2d 1100, 1102–03 (1985) (the legislature did not intend that the statute regarding visitation rights of noncustodial parents or others to alter the protection afforded adopted children and their new families from disturbances by the child's natural family). For other examples, see *L.F.M. v. Department of Social Services*, 67 Md. App. 379, 507 A.2d 1151, 1154, 1156–57 (1986); *Christian Placement Service v. Gordon*, 102 N.M. 465, 470, 697 P.2d 148, 153 (App.1985); *Faust v. Messinger*, 345 Pa.Super. 155, 497 A.2d 1351 (1985); *In re Adoption of Schumacher*, 120 Ill.App.3d 50, 75 Ill.Dec. 926, 929–30, 458 N.E.2d 94, 97–98 (1983); *Aegerter v. Thompson*, 610 S.W.2d 308, 310 (Mo.App.1980); *In re Fox*, 567 P.2d 985, 987 (Okla.1977); *Browning v. Tarwater*, 215 Kan. 501, 524 P.2d 1135, 1139–40 (1974).

In addition, the adoption statute suggests that grandparent visitation cannot carry over into an adoption where all other rights of the natural family have been extinguished. Utah Code Ann. § 78–30–9 (Supp.1991) (after adoption, "child shall be regarded and treated in all respects as the child of the adoptive parent or parents."); Utah Code Ann. § 78–30–10 (Supp.1991) ("After that decree of adoption is entered, the adoptive parent or parents and the child shall sustain the legal relation of parent

and child, and have all the rights and be subject to all the duties of that relation.").

Ours is the more narrow question of whether, as a matter of law, grandparents have standing to assert visitation rights to a child that has been released to an agency and placed with adoptive parents, but where the adoption has not yet been finalized. The Court of Appeals of New Mexico dealt with a similar case where the mother had consented to an adoption and the child had been placed within an adoptive home, but the adoption had not yet been finalized. The New Mexico court held that, where a child has been released for adoption through relinquishment and consent to adoption, and adoption proceedings are pending, the visitation rights provided by statute to natural grandparents should also end:

> [S]tatutory visitation rights do not apply in adoption proceedings after the termination of the natural parents' rights. The greater number of courts which have addressed the question have come to a similar conclusion: courts are not free to intervene on behalf of relatives who seek visitation rights after an adoption decree which terminates parental rights.

> Many of these cases rely on the rationale that an adoption terminates the relationship between an adopted child and his or her natural parents. Such a rationale would support the conclusion that when termination has occurred and adoption proceedings are pending, the legislature also intended that the visitation rights provided by statute to natural grandparents would also end.... We hold that the fact that no adoption decree has yet been entered is irrelevant where the termination has occurred and adoption proceedings are pending.

*Christian Placement Service*, 697 P.2d at 153 (citations omitted).

This analysis holds for the present circumstance as well where we have adopted

---

2. We note the singular circumstances here, where the natural father died prior to the birth and therefore had no opportunity to acknowl- edge the child. We assume for the purposes of this opinion that such would have occurred, based on the evidence.

the same line of cases and where our statute codifies the same theory of adoption. We therefore hold that where a child has been released to a licensed adoption agency for the purpose of being placed with adoptive parents for an anonymous and confidential adoption, any visitation rights of the child's natural family end with the initiation of such adoption proceedings. Thus, the court did not err in concluding that the Kaspers had no standing to bring a petition for visitation rights and in dismissing their petition.

Affirmed.

GREENWOOD and JACKSON, JJ., concur.