W. SHARP, Judge.
Judith Dillon (the maternal grandmother) appeals from the final adoption of her granddaughter, Carolyn Robb, by James Robb. The trial judge heard considerable testimony concerning whether Dillon would be a better parent to Carolyn than James, a man who had originally thought he was the child’s father, and with whom the child was then living. The trial judge refused to give Dillon “priority” of consideration pursuant to section 63.0425, Florida Statutes. This section provides as follows:
(1) When a child who has lived with a grandparent for at least 6 months is placed for adoption, the agency or intermediary handling the adoption shall notify that grandparent of the impending adoption before the petition for adoption is filed. If the grandparent petitions the court to adopt the child, the court shall give first priority for adoption to that grandparent.
We affirm because the record clearly supports the trial judge’s finding that adoption by James Robb is in the child’s best interest.
All such cases are so fact-specific they afford. only general guidance for future cases. Robb’s relationship to Carolyn was highly unusual. He began living with the child’s mother, Briana, in 1983 when Briana was estranged from her mother, Dillon. Robb wanted to marry her and was shocked to learn she was only thirteen.
Dillon agreed to give her consent to their marriage and then she withdrew it. Briana and Robb left the state and lived in South Carolina a few months, and then in Texas for one year. They always presented themselves to others as a married couple. Robb worked to support them.
*892 They moved on to Arizona and then to California. In California, in 1985, Briana gave birth to Carolyn. Robb paid all of the hospital and medical expenses for Briana and Carolyn. He was listed on the birth certificate as Carolyn’s father and he (as well as everyone else) believed he was her father until HLA blood tests taken in the paternity phase of this litigation suggested otherwise.
Briana, Robb and Carolyn returned for a time to Florida and lived together as a family. In June of 1987, Briana said she wanted to go back to California to take a computer course. She took Carolyn with her. Robb continued to send money to California for their support as long as Briana kept in touch with him. But he lost track of her whereabouts in late 1987 when Briana moved and cut off all contact with him.
Without telling Robb, Briana returned to Florida in 1989. She committed suicide shortly thereafter. Briana’s brother cared for Carolyn at first. When Robb learned of Briana’s death and Carolyn’s presence in Florida, he sought custody by filing a paternity suit.
Briana’s brother gave Robb custody of Carolyn voluntarily because he was unable to provide necessary medical care for her. Since November of 1989, Robb has cared for Carolyn in his home as his child. She was six and one-half years old at the time of the trial (February of 1991), and had lived with Robb four and one-half years of her short life.
Robb lives in a small duplex. His sixteen-year-old niece baby-sits Carolyn while he works. His mother and father, who live nearby, help out and supply additional support. Testimony of neighbors and family established that Robb is a caring, conscientious parent to Carolyn and they have a good, loving father-daughter relationship.
The testimony also established that Dillon and Carolyn have a good grandmother-granddaughter relationship. But Dillon had substance abuse problems in the past, and her own child-rearing efforts were flawed. She was estranged from both her daughter and her son. Following a recent divorce, she left Michigan for New Orleans, where she hoped to get into an artistic line of work. She had some investment income, but no job, family or longtime contacts in New Orleans. Her future plans appeared somewhat unclear. How Carolyn would fit into Dillon’s life was also unclear, except she intended to live with her in New Orleans.
Carolyn had never lived with Dillon or visited in her home. Dillon said she intended to “minimize” any contact with Robb, and his family, should she be allowed to adopt Carolyn. That would sever the child from the only home place she had ever known and from the persons she knew best and thought were her closest living relatives.
Under these circumstances, the trial judge’s conclusion that Robb be allowed to adopt Carolyn should be affirmed. Robb is no ordinary stranger. He has played the role of father to this child for her lifetime, as much as he has been permitted to do by circumstances beyond his control. The court found that Robb has natural parental love and affection for the child and that there are strong emotional ties between them. It also found that he could best provide for the child and maintain her in a stable environment.
The trial judge refused to apply section 63.0425 (grandparent priority) because it interpreted such priority as applicable only to grandparents with whom a grandchild has lived for at least six months prior to the adoption proceeding. Although this may be too restrictive a reading of the statute,[1] any priority is not superior tó a finding (well-supported by record, as in this case) that adoption by a non-grandparent is in the best interest of the child.[2] Such “priority” could be determinative in deciding between parties where all things were *893 basically “even” or “close.” That was not the situation in this case.
AFFIRMED.
DAUKSCH, J., concurs and concurs specially with opinion.
HARRIS, J., dissents with opinion.

. See Davis v. Dixon, 545 So.2d 318 (Fla. 3d DCA), rev. denied, 551 So.2d 460 (Fla.1989).

. § 63.142(4), Fla.Stat. (1989).