784 So.2d 565 (2001)
Y.H., Appellant,
v.
F.L.H. and K.W.H., Appellees.
No. 1D00-1832.
District Court of Appeal of Florida, First District.
May 15, 2001.
*567 John W. Gardner, of John W. Gardner, P.A., Brandon, for Appellant.
Michael J. Korn, Korn & Zehmer, P.A., Jacksonville and Michael A. Shorstein, Shorstein & Kelly, P.A., Jacksonville, for Appellees.
BENTON, J.
Y.H., who seeks to adopt her infant perhaps by now toddlinggranddaughter, S.L.H., appeals the trial court's order denying her motion to intervene in the adoption proceedings that F.L.H. and K.W.H. initiated, with the consent of S.L.H.'s parents, in order to adopt S.L.H. themselves. We affirm.

I.
On January 12, 2000, S.L.H. was born to Y.H.'s unmarried, minor daughter, who lived with Y.H. while she was pregnant. The day after her granddaughter was born, Y.H. filed a petition for adoption in Hillsborough County. The following day, January 14, 2000, F.L.H. and K.W.H. filed their petition to adopt S.L.H. in Duval County, alleging that an intermediary had placed S.L.H. with them that day.
On February 16, 2000, Y.H. filed a motion to intervene in the Duval County proceeding and to consolidate that case with the Hillsborough County case. Earlier in the Duval County proceeding, F.L.H. and K.W.H. had filed waivers of right to counsel, affidavits of birthparents, and consents for adoption, all of which S.L.H.'s biological parents had signed, agreeing to relinquish custody of and all rights to S.L.H. As grounds for intervention and consolidation, Y.H. cited section 63.0425(1), Florida Statutes (1999), which provides:
When a child who has lived with a grandparent for at least 6 months is placed for adoption, the agency or intermediary handling the adoption shall notify that grandparent of the impending adoption before the petition for adoption is filed. If the grandparent petitions the court to adopt the child, the court shall give first priority for adoption to that grandparent.
Y.H. asserted priority on the theory that her granddaughter while yet unborn had lived with her for the six months required by the statute. In denying the motion to intervene and to consolidate, the trial court found that S.L.H. had not lived with her maternal grandmother at any time subsequent to her birth, and that the biological parents had executed valid waivers of right to counsel, affidavits of birthparents, and consents for adoption. See § 63.082(5), Fla.Stat. (1999) ("Consent may be withdrawn only when the court finds that the consent was obtained by fraud or duress.").

II.
An order denying a motion to intervene is final as to and appealable by *568 the movant. See, e. g., City of Sunrise v. Town of Davie, 472 So.2d 458, 459 (Fla. 1985). On appeal as below, however, Y.H. also argues that it was error not to consolidate the case pending in Duval County with the case she had initiated in Hillsborough County. But no appeal lies from a non-final order denying consolidation, even where a party has filed the motion to consolidate. In authorizing review of non-final orders that concern venue, Florida Rule of Appellate Procedure 9.130(a)(3)(A) creates no exception for cases where no venue question arises if consolidation does not occur. See Wetherington v. State Farm Mut. Auto. Ins. Co., 661 So.2d 1276, 1277 (Fla. 2d DCA 1995).
Only in rare cases, moreover, is "it appropriate to grant certiorari relief from orders denying motions to consolidate. See, e.g., Tommie v. LaChance, 412 So.2d 439 (Fla. 4th DCA 1982)." Pages v. Dominguez, 652 So.2d 864, 866 (Fla. 4th DCA 1995).
The decision to consolidate actions ordinarily falls within the sound discretion of the trial court. Barnes v. Meece, 530 So.2d 958 (Fla. 4th DCA 1988); Brody Constr. Inc. v. Fabri-Built Structures, Inc., 322 So.2d 61 (Fla. 4th DCA 1975). In order to justify granting certiorari relief from pretrial orders, there must be a departure from the essential requirements of law which will cause material injury that cannot be rectified on plenary appeal. Barnes, 530 So.2d at 959.
652 So.2d at 866. Here the trial judge had no authority to consolidate the case below with a case pending in another circuit. Florida Rule of Civil Procedure 1.270(a), applicable by virtue of Florida Family Law Rule of Procedure 12.270, authorizes consolidation only "[w]hen actions involving a common question of law or fact are pending before the [same] court." See Wetherington, 661 So.2d at 1277 ("[T]he trial court acted in excess of its jurisdiction by ordering that a case pending outside the confines of its territorial jurisdiction be consolidated with a case over which it did have jurisdiction.").

III.
Florida Family Law Rule of Procedure 12.230 provides that intervention is to be governed by Florida Rule of Civil Procedure 1.230, which provides in turn:
Anyone claiming an interest in pending litigation may at any time be permitted to assert a right by intervention, but the intervention shall be in subordination to, and in recognition of, the propriety of the main proceeding, unless otherwise ordered by the court in its discretion.
This language has been definitively construed to require more than merely asserting a putative right. See Union Cent. Life Ins. Co. v. Carlisle, 593 So.2d 505, 507 (Fla.1992); Morgareidge v. Howey, 75 Fla. 234, 78 So. 14, 15 (1918). The Florida Supreme Court has described two steps that the analysis of motions to intervene requires:
First, the trial court must determine that the interest asserted is appropriate to support intervention. Once the trial court determines that the requisite interest exists, it must exercise its sound discretion to determine whether to permit intervention.
Carlisle, 593 So.2d at 507 (citation omitted). The question whether the asserted interest supports intervention can itself usefully be subdivided into two parts.
The asserted interest must both a) already be at issue in the proceeding, and b) be of a kind the would-be intervenor is a proper party to raise. Our supreme court has said:
*569 The rule authorizing intervention has been stated as follows:
"... [T]he interest must be that created by a claim to the demand in suit or some part thereof, or a claim to, or lien upon, the property or some part thereof, which is the subject of litigation." 17 Am. & Eng. Ency. of Law (2d Ed.) 181; Horn v. Volcano Water Co., 13 Cal. 62, 73 Am. Dec. 569; Smith v. Gale, 144 U.S. 509, 12 Sup. Ct. 674, 36 L.Ed. 521; Isaacs v. Jones, 121 Cal. 257, 53 Pac. 793, 1101[795]; Wightman v. Evanston Yaryan Co., 217 Ill. 371, 75 N.E. 502, 108 Am. St. Rep. 258, 3 Ann. Cas. 1089.
In the latter case the court said:
"From the foregoing text and decisions we understand the rule to be no more nor less than that parties having an interest in the subject-matter of the suit in equity, and who are either necessary or proper parties to such suit, if not made so by the plaintiff, may come in by way of application to intervene and be made parties complainant or defendant, to the end that their interests may be adjudicated and protected."
Morgareidge, 78 So. at 15 (emphasis supplied). (By definition, a necessary party is a proper party.) Y.H. contends that the trial court erred in concluding that she was not a proper party to the adoption proceeding F.L.H. and K.W.H. initiated.
The Morgareidge court also held that the asserted interest must be such that the would-be intervenor "will either gain or lose by the direct legal operation ... of the judgment." 78 So. at 15 (quoting 17 Am. & Eng. Encyclopedia of Law 181 (2d Ed. 1896)). At issue here is whether Y.H. has demonstrated that the trial court erred in concluding that biological grand-motherhood, without more, gives rise to no legal rights that may be gained or lost, once the grandchild's parents have consented to adoption.
Recently, with respect specifically to adoption proceedings, our supreme court opined, in ruling against a biological father whose parental rights had been terminated:
In In re Adoption of a Minor Child, 593 So.2d 185 (Fla.1991), we concluded that a child's natural grandparents were entitled to intervene in the child's adoption proceedings as legally interested parties. We determined that the grandparents had acquired a legal interest in maintaining a relationship with their grandchild based upon a New Jersey custody order issued earlier that year granting them visitation rights. Intervention in the adoption proceeding allowed them to protect these rights which might have been terminated by the adoption order.
Contrasted with In re Adoption of a Minor Child is the case before us. As one whose parental rights have been terminated through judicial proceedings, Rivera has no direct interest which may be affected by the adoption proceedings because his parental rights no longer exist. He stands as a stranger to the proceedings, and the fact that he is the child's biological father is now legally irrelevant. As such, he has no standing to intervene in a third-party adoption proceeding involving the child.
Our holding is consistent with section 63.062(4), Florida Statutes (Supp.1992), which states that if parental rights to a minor have previously been terminated, then only the consent of the licensed child-placing agency handling the adoption is required. Id.; see also § 39.47(1), Fla.Stat. (1991); § 63.072(2), Fla.Stat. (1991). Thus, the Legislature has determined that one whose parental rights have been terminated does not *570 have a sufficient interest in the matter to warrant requiring his or her consent for the child's adoption. Likewise, we believe that once parental rights to a child have been terminated, the parent also lacks the legal interest necessary to establish standing to intervene and contest for the adoption of the child.
Stefanos v. Rivera-Berrios, 673 So.2d 12, 13-14 (Fla.1996) (emphasis supplied and footnote omitted). Importantly, the Stefanos court acknowledged that the father, whose parental rights had been terminated for neglect and abandonment, was also entitled to petition for adoption, just as Mr. Rivera's parents might have, and just as Y.H. has in fact done here.
Despite the permanency of a termination order, a parent whose parental rights have been terminated is not precluded from establishing new rights to his or her child through independent adoption proceedings. Section 63.042(2)(b), Florida Statutes (Supp. 1992) allows an unmarried adult to adopt, including the birth parent of the person to be adopted. See, e.g., In re T.G.T., 433 So.2d 11 (Fla. 1st DCA 1983) (permitting mother of child who was permanently committed in a dependency proceeding to petition for adoption of her child upon rehabilitation); Green v. State Dep't of Health & Rehabilitative Servs., 412 So.2d 413 (Fla. 3d DCA 1982) (holding that termination of the natural parents' rights by commitment proceedings does not foreclose their right to seek adoption pursuant to chapter 63, Florida Statutes (1979)).
673 So.2d at 13. See generally L.J.R. v. T.T., 739 So.2d 1283, 1284-85 (Fla. 1st DCA 1999). But the Stefanos majority opinion went on to point out that "the ability of a parent to petition for the adoption of his or her child after termination of parental rights is a different issue from that of the parent's ability to intervene in an ongoing third-party adoption proceeding." 673 So.2d at 13. Justice Harding elaborated on this aspect of the case in his concurring opinion:
[The biological father] stands in the same position as anyone else who is a legal stranger to this child. While most individuals are eligible to adopt a child to whom they are a legal stranger, see section 63.042(2), Florida Statutes (1991), they have no right to intervene in someone else's adoption proceeding with that child ....
To permit intervention by this biological parent whose parental rights have been terminated would have one of two effects: either it would give the biological parent who has been adjudicated a legal stranger a preference over other legal strangers that is not now provided by law; or it would open the door to intervention by anyone. Either result would significantly undermine the stability of legal proceedings dealing with the termination of parental rights and adoption proceedings.
673 So.2d at 15 (Harding, J., concurring). Here Y.H. maintains that she was entitled to intervention because, as a biological grandparent, she enjoys a right or preference "provided by law."

IV.
Specifically on two grounds only, one state and one federal, does Y.H. contend that she has legal rights that the trial court erred in not letting her intervene to protect. First, she asserts a statutory preference under section 63.0425(1), Florida Statutes (1999), by virtue of her daughter's living with her for six months before her granddaughter's birth. Second, she asserts a right grounded in federal, substantive due process, by virtue of her daughter's minority at the time she gave *571 birth, citing Troxel v. Granville, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000), and Meyer v. Nebraska, 262 U.S. 390, 399, 401, 43 S.Ct. 625, 67 L.Ed. 1042 (1923) (holding that the "liberty" protected by the Due Process Clause includes the right of parents (not grandparents) to "establish a home and bring up children" and "to control the education of their own"). There has been no contention that the child's rights, constitutional or otherwise, give Y.H. a right to intervention.

A.
Initially, Y.H. argues that, while her granddaughter S.L.H. was in her mother's womb, she "lived with [Y.H.] for at least 6 months," 63.0425(1), Fla. Stat. (1999), because S.L.H.'s mother (Y.H.'s daughter) lived with Y.H. that long while she was pregnant. See Adoption by Choice, Inc. v. X.Z.C., 747 So.2d 1006, 1007 (Fla. 2d DCA 1999) ("The statute only requires that the child live with the grandparent for at least six months. It does not require that the child reside `solely' with the grandparent in the grandparents' residence."), rev. denied, 753 So.2d 563 (Fla. 2000). Y.H. concedes that S.L.H. did not live with her after birth. Cf. In re R.J.C., 300 So.2d 54, 56 (Fla. 1st DCA 1974) (discussing superseded statutory preference where grandchild had lived with grandmother postpartum from September 4, 1972, "until approximately the middle of June, 1973").
The trial court declined to construe the words "lived with a grandparent" to include time a fetus spends in a daughter's womb. This commonsense construction of the statute comports with its manifest intent. The requirement that grandparent and grandchild live with one another for six months defines, albeit by a necessarily arbitrary chronological parameter, the substantial relationship between them the Legislature intends the statute to protect. Cf. S.J. v. W.L., 755 So.2d 753, 755 (Fla. 4th DCA 2000) (holding siblings lack sufficient relationship to entitle them to intervene in adoption proceeding); Florida Dep't of Health & Rehabilitative Servs. v. Doe, 659 So.2d 697, 698-99 (Fla. 1st DCA 1995) (holding couple who had adopted child's half-sibling lacked standing to intervene in adoption proceeding).

B.
We also reject Y.H.'s contention that her federal, constitutional liberty interests as a parent of an underage mother give her a right to intervene in S.L.H.'s adoption proceedings. We accept her premise "that the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." Troxel v. Granville, 530 U.S. 57, 66, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) (plurality opinion). See Washington v. Glucksberg, 521 U.S. 702, 720, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997); Santosky v. Kramer, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); Parham v. J. R., 442 U.S. 584, 602, 99 S.Ct. 2493, 61 L.Ed.2d 101 (1979); Quilloin v. Walcott, 434 U.S. 246, 255, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978); Pierce v. Society of Sisters, 268 U.S. 510, 535, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); Meyer v. Nebraska, 262 U.S. 390, 399, 401-02, 43 S.Ct. 625, 67 L.Ed. 1042 (1923).
At issue here, however, is not only indeed, not principallyY.H.'s right to the care, custody and control of her daughter, but the daughter's right to make decisions about S.L.H.'s care, custody and control. S.L.H.'s mother has a "fundamental constitutional right to make decisions concerning the rearing of her own [child]." Troxel, 530 U.S. at 70, 120 S.Ct. 2054. This is the central theme running through Troxel's *572 splintered decision. Absent facts not alleged here, Y.H.'s rights as S.L.H.'s grandmother to make decisions about rearing S.L.H., if any, are eclipsed by S.L.H.'s own mother's rights in this regard. This includes the right to give S.L.H. up for adoption by somebody other than her maternal grandmother.
As the Troxel plurality opinion also acknowledged, 530 U.S. at 75, 120 S.Ct. 2054, "a domestic relations proceeding in and of itself can constitute state intervention that is so disruptive of the parent-child relationship that the constitutional right of a custodial parent to make certain basic determinations for the child's welfare becomes implicated." Troxel, 530 U.S. at 101, 120 S.Ct. 2054 (Kennedy, J., dissenting). Similarly, a rule allowing any or all four parents of underage parents, who have decided to give their child up for adoption, to intervene as a matter of right in adoption proceedings would be no small burden on the young parents' right to choose adoption for their child.

V.
Y.H. cannot, of course, prevail on appeal on grounds the record does not support or which she has failed to argue. Y.H. does not contend, for example, that she ever had or sought to obtain court-ordered visitation rights with her newborn granddaughter. Cf. In re Adoption of a Minor Child, 593 So.2d 185, 189 (Fla.1991); In re M.L.M., 528 So.2d 54, 55-56 (Fla. 1st DCA 1988). She makes no allegation of fraud or deception of the kind discussed in Ramey v. Thomas, 382 So.2d 78, 81-82 (Fla. 5th DCA 1980), where the maternal grandparents also apparently had court-ordered visitation rights, at least until they fled the state with the child.

A.
Whether grandparents enjoy a statutory preference as a grandchild's potential adoptive parents, simply by virtue of their grandparenthood, has not been decided by the Supreme Court of Florida. See In re Adoption of a Minor Child, 593 So.2d at 189 n. 9 ("We do not address whether grandparents would be entitled to notice of an impending adoption in the absence of a court order [awarding visitation rights.]"). But see generally Belair v. Drew, 770 So.2d 1164 (Fla.2000) (approving Williams v. Spears, 719 So.2d 1236 (Fla. 1st DCA 1998)(declaring section 752.01(1)(b), unconstitutional as applied, where divorced parents opposed paternal grandmother's visitation)); Saul v. Brunetti, 753 So.2d 26 (Fla.2000) (declaring unconstitutional section 752.01(1)(d) concerning grandparent visitation where the minor child is born out of wedlock); Von Eiff v. Azicri, 720 So.2d 510 (Fla.1998) (declaring unconstitutional section 752.01(1)(a) concerning grandparent visitation where one or both parents are deceased); Beagle v. Beagle, 678 So.2d 1271 (Fla.1996) (declaring facially unconstitutional section 752.01(1)(e) concerning grandparent visitation with minor child living with both natural parents).
The present case does not require us to address this question, however, because Y.H. is not contending that the statute entitles her to priority or to intervene simply because she is the grandmother of a child who has been put up for adoption. She does not make the argument that carried the day in Davis v. Dixon, 545 So.2d 318 (Fla. 3d DCA 1989). See also Dillon v. Robb, 597 So.2d 891, 894-95 (Fla. 5th DCA 1992) (Harris, J., dissenting). Nor does she claim that the Department of Health and Rehabilitative Services had approved her as an adoptive parent. Cf. J.R. v. R.M., 679 So.2d 64, 65 (Fla. 4th DCA 1996); C.S. v. S.H., 671 So.2d 260, 265 (Fla. 4th DCA 1996) (approving trial court's permitting "blood relatives approved *573 as adoptive parents by HRS" to intervene in adoption proceedings that foster parents had initiated in violation of their agreement with the Department of Health and Rehabilitative Services).

B.
Y.H. does not contend, even in arguing that constitutional rights confer standing on her, that every grandparent is entitled to intervene in proceedings initiated to adopt grandchildren. See generally Benavidez v. Oliva, 52 Ill.App.3d 626, 10 Ill.Dec. 362, 367 N.E.2d 971, 975 (1977) ("[I]n the absence of any allegations of unfitness on the part of the adopting parents or any question relative to the mother's consent or the termination of the putative father's rights, there was no legal basis for the [grandparents'] petition to intervene."); In re The Adoption of I.K.E.W., 724 N.E.2d 245, 249 (Ind.Ct.App.2000) ("[N]oncustodial grandparents are not entitled to intervene in adoption proceedings."); Burns v. Bines, 189 Md. 157, 55 A.2d 487, 490 (1947) ("Grandparents have no `right' to custody; in these domestic tragedies they unfortunately have only burdens and responsibilities which they assume on account of the parents' misconduct or misfortune."); In re Adoption of H.M.C., 11 S.W.3d 81, 90 (Mo.Ct.App.2000) ("Paternal Grandparents['] biological relationship to the child, by itself, does not constitute the necessary `interest' under Rule 52.12(a)(2), to require intervention. Paternal Grandparents have no legal right, under current Missouri caselaw, which will be directly enlarged or diminished by the adoption of their biological grandchild."); In re S.R., 217 Neb. 528, 352 N.W.2d 141, 144 (1984) ("We hold that grandparents, as such, do not have standing to interfere with the process of termination of parental rights and the adoptive procedures provided by our statutes."), overruled in part, In re Artharena D., 253 Neb. 613, 571 N.W.2d 608 (1997) (acknowledging statutory expansion of the term "custodian"); Preston v. Mercieri, 133 N.H. 36, 573 A.2d 128, 130 (1990) ("[A]t common law, ascendants were bound to grandchildren only by the links of love and heredity, and neither generation could be heard to complain if, by sudden wrench, they were forced apart."); Christian Placement Serv. v. Gordon, 102 N.M. 465, 697 P.2d 148, 155 (Ct.App.1985) ("Simply by virtue of her status of grandparent, she had no right to custody .... [and] the trial court was not authorized to grant visitation rights. Under these circumstances, [the grandmother] was not entitled to intervene [in an adoption proceeding] as a matter of right."), partially superseded by statute as recognized in, Lucero v. Hart, 120 N.M. 794, 907 P.2d 198 (Ct.App.1995); In re Schmidt, 25 Ohio St.3d 331, 496 N.E.2d 952, 957 (1986) ("Likewise, the [grandparents] had no legal interest in the care and custody of their grandson, which would have allowed them to intervene [in an adoption proceeding] as of right.... [T]he [grandparents'] `claimed interest' was not legally protectable."); Puleo v. Forgue, 610 A.2d 124, 126 (R.I.1992) ("[g]randparents do not have standing in adoption proceedings....") (citing In re Nicholas, 457 A.2d 1359, 1360 (R.I.1983)); In re Adoption of Taylor, 678 S.W.2d 69, 71-72 (Tenn.Ct.App.1984) ("There is nothing in the statute which provides for the intervention of grandparents [in the adoption proceeding] and we see no useful purpose in their being permitted to do so as a matter of right."); Kasper v. Nordfelt, 815 P.2d 747, 748 (Utah Ct.App.1991) (finding that grandparents do not have "a `dormant' or `inchoate right or interest' in the custody of a parentless child" that would mandate intervention). Cf. In re Adoption of Hess, 386 Pa.Super. 301, 562 A.2d 1375 (1988) (holding that grandparents with whom four-year old and five-year old grandchildren had lived "for various periods *574 of time" had right to intervene in adoption proceedings). The Utah Court of Appeals wrote in an adoption case:
If the law recognized any right of custody beyond the parents, the number of potential protestants, such as grandparents, brothers and sisters of the parents (aunts and uncles of the child), or immediate relatives, would create a situation so fraught with possibilities for trouble as to make the placement of children difficult if not entirely impractical, a result which we agree should be avoided.
Kasper, 815 P.2d at 749 (quoting Wilson v. Family Servs. Div., Region Two, 554 P.2d 227, 229 (Utah 1976)). See also Benavidez, 10 Ill.Dec. 362, 367 N.E.2d at 974-75 ("In the absence of a statute giving the grandparents a preference ... where are we to stop in allowing relatives to block a proposed adoption? ... How can we draw the line at grandparents?").

VI.
Unpersuaded by Y.H.'s arguments for reversal, we affirm. The arguments available to her were limited because Y.H. had no significant relationship with S.L.H. beyond sheer biological grandmotherhood. We recognize, however, that relationships between grandparents and grandchildren take many forms.
For example, in 1998, approximately 4 million childrenor 5.6 percent of all children under age 18lived in the household of their grandparents. U.S. Dept. of Commerce, Bureau of Census, Current Population Reports, Marital Status and Living Arrangements: March 1998 (Update), p. i (1998).
Troxel, 530 U.S. at 64, 120 S.Ct. 2054. We have no occasion in the present case to decide questions any other type of relationships between grandchildren and their grandparents might present in connection with adoption (or any other) proceedings.
Affirmed.
PADOVANO, J., CONCURS; POLSTON, J., DISSENTS WITH OPINION.
POLSTON, J., dissenting.
I agree that the trial court properly denied the appellant's motion to consolidate. I also agree that appellant ("GP/Mother") does not have a priority preference for adoption under section 63.0425(1), Florida Statutes (1999), because the purpose of the statute is to give a preference to grandparents who have established a relationship with the child after birth. Nevertheless, I respectfully dissent because I believe that GP/Mother should have been permitted to intervene. The lack of a statutory priority interest does not cause GP/Mother to have no interest at all. Florida intervention law, the child's constitutional rights, and GP/Mother's constitutional rights as a mother of a minor child, support GP/Mother's intervention.

Florida Intervention Law
The Florida Supreme Court, in Stefanos v. Rivera-Berrios, 673 So.2d 12 (Fla.1996), stated that an intervenor in an adoption proceeding must have an interest that is "direct and immediate" and "show that he or she will gain or lose by the direct legal operation and effect of the judgment." 673 So.2d at 13. The court held that a biological father who previously had his parental rights terminated could not intervene in an adoption proceeding because he was a legal stranger.
In the instant case, GP/Mother is not in the same legal posture as the father in Stefanos because the father's legal rights had already been terminated for neglect and abandonment, and he was therefore a *575 legal stranger. GP/Mother is not yet a legal stranger, but a successful conclusion of this adoption proceeding will result in her becoming a legal stranger without an opportunity to be heard. Section 63.172(1)(b), Florida Statutes (1999) states that a judgment of adoption terminates all legal relationships between the adopted person and the adopted person's relatives, including the birth parents. (Emphasis added). This termination is a loss to GP/Mother by the direct legal operation and effect of the adoption judgment. Therefore, under Stefanos, GP/Mother should be permitted to intervene.
GP/Mother is more in the posture of the grandparents in In re Adoption of a Minor Child, 593 So.2d 185 (Fla.1991), than the father in Stefanos. In Minor Child, the Court determined that, "if for no other reason," the grandparents had legal rights through a New Jersey court order granting them visitation rights. 593 So.2d at 189. The Court in Stefanos, distinguishing Minor Child, recognized that the grandparents' rights from the New Jersey court order would be terminated by the adoption order, as contrasted to the natural father's rights which had already been terminated. 673 So.2d at 13-14. The complete termination of all GP/Mother's rights from this proceeding is as significant as the New Jersey court order recognized by the Florida Supreme Court that sufficiently conveyed intervention status to the grandparents.
This Court recognizes that a child's relationship with a grandparent has sufficient legal significance to justify intervention in an adoption proceeding. In the Interest of M.L.M., 528 So.2d 54, 56 (Fla. 1st DCA 1988)(intervention by grandparents in adoption proceeding affirmed; the child's relationship with paternal grandparents was at stake). See also Ramey v. Thomas, 382 So.2d 78, 81-82 (Fla. 5th DCA 1980) ("law of Florida recognizes substantial rights between grandparent and grandchild"; the adoption would sever and cut off any relationship with grandparents; grandparents had sufficient interest to seek relief from judgment of adoption); cf. In re Interest of Kayle C. & Kylee C., 253 Neb. 685, 574 N.W.2d 473, 477-478 (1998) (grandparents entitled to intervene in dependency proceeding because they will realize significant loss by direct operation of judicial determinations that would terminate the relationship between grandparent and grandchild).
The Fourth District Court of Appeal, in J.R. v. R.M., 679 So.2d 64 (Fla. 4th DCA 1996) and C.S. v. S.H., 671 So.2d 260 (Fla. 4th DCA 1996), ruled that adoptive parents had a sufficient legal interest to give them intervenor status, arising from the Department of Health and Rehabilitative Services' approval as parents. The court in J.R. stated that "[p]etitioners' interest is direct and immediate; their interests would be directly and adversely affected by the outcome of the foster parents' pending adoption proceeding." 679 So.2d at 65 (emphasis added). Similarly, in C.S., the court upheld the biological relatives' intervention in an adoption proceeding, stating:
As a preliminary matter, the foster parents contest the biological relatives' standing to bring this appeal. The biological relatives were permitted to intervene in both the injunction action and the adoption proceedings below. They are blood relatives approved as adoptive parents by HRS. Their interests would be directly and adversely affected if we were to approve the final judgment of adoption. The biological relatives have a direct interest in the outcome of this appeal and thus, have standing to bring this appeal. See Fla.R.Civ.P. 1.230; Union Cent. Life Ins. Co. v. Carlisle, *576 593 So.2d 505 (Fla.1992); In re Adoption of a Minor Child, 593 So.2d 185 (Fla.1991); cf. Stefanos v. Rivera-Berrios, 673 So.2d 12 (Fla.1996).
671 So.2d at 265 (emphasis added). GP/Mother's interest is direct and immediate and her interests will be directly and adversely affected by the outcome of this proceeding, just as the unrelated persons in J.R. and the relatives in C.S., who were approved by HRS.
Because I would rule that Florida law permits GP/Mother to intervene, I would not reach her argument that the trial court's denial of her intervention violates her federal constitutional rights. However, I will briefly address the majority's analysis of her constitutional claims because I disagree.

Constitutional Analysis
There are three competing constitutional interests present in this case: (i) those of GP/Mother that arise because she is the mother of her minor daughter, not because she is the grandparent of the child, (ii) those of the minor child-bearing daughter as the mother of the child, and (iii) those of the child. Appellees properly phrase the issue: "Whose rights trump whose?"
The answer is that the child's rights trump those of the terminating minor parent and those of GP/Mother. Florida law is settled that the interest of the child is the primary consideration of an adoption proceeding. Ramey v. Thomas, 382 So.2d 78, 80-81 (Fla. 5th DCA 1980) ("In an adoption proceeding, as well as any other kind of proceeding regarding the custody of a child, the primary issue is the best-interest and welfare of the child. Harden v. Thomas, 329 So.2d 389 (Fla. 1st DCA 1976), In re Adoption by Cooper, 242 So.2d 196 (Fla. 1st DCA 1970); In re Vincent's Adoption, 219 So.2d 454 (Fla. 1st DCA 1969).").
Because the child's interests are most important, the court should make its best effort to base its judgment on all of the pertinent facts elicited during hearings. A grandparent may have pertinent facts to present to the court that would justify intervention. In re Adoption of Melanie Lynn Hess, 386 Pa.Super. 301, 562 A.2d 1375 (1989)(reversed to permit grandparents intervention in adoption proceedings; refusing to permit intervention denied children their right to have their best interests determined upon consideration of all relevant facts). A grandparent should be permitted to intervene if she presents relevant facts to determine the child's best interests, which are constitutionally protected. U.S. Const. Amend. XIV ("nor shall any State deprive any person of life, liberty, or property, without due process of law"); Art. I, § 2, Fla. Const. ("All natural persons, female and male alike, are equal before the law and have inalienable rights, among which are the right to enjoy and defend life and liberty, to pursue happiness, ...").
The majority holds that the constitutional rights of the minor daughter are sufficiently greater than those of GP/Mother to bar GP/Mother from intervening. The majority agrees that the "Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." However, citing Troxel v. Granville, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000), the majority then decides that the minor daughter's right to make decisions about her child's care, custody, and control, including the right to give the child up for adoption by somebody other than GP/Mother, bar GP/Mother's efforts to intervene.
In Troxel, grandparents were granted visitation rights that were contrary to the *577 wishes of the parents. The Court held that the Washington statute at issue unconstitutionally infringed on the parents' fundamental right to rear their children. However, Troxel does not control the outcome of this case. Unlike the instant case, there were no competing federal constitutional rights present in Troxel. A right under the federal constitution is far superior to one arising from legislation. Rights under legislation may be eliminated by courts if the legislation is held unconstitutional. In contrast, federal constitutional rights may be balanced, but not eliminated. GP/Mother's rights, as a mother, are constitutional rather than statutory and cannot be eliminated as in Troxel. GP/Mother's constitutional rights as a parent of a minor do not cease to exist just because that minor had a child.
The various visitation cases cited by the majority, relating to the ability of the parents to control the raising of their own children, are not applicable. The minor daughter is giving up her rights to rear the child and is placing the responsibility and privileges of the child in the hands of others. There is no expectation of continued involvement by the terminating parent with the child that will be interfered with, as is present in visitation cases. Accordingly, the minor daughter's constitutional rights are either eliminated because of her voluntary relinquishment, becoming a legal stranger as the father in Stefanos, or at the least her rights are greatly diminished in comparison to the other competing constitutional interests.
Therefore, the constitutional rights of the child and GP/Mother as a parent of a minor child, support GP/Mother's intervention in this case without a priority interest. Although I believe that GP/Mother has the right to intervene and be heard, I make no comment on the merits of her claim. The trial court would be free to rule in favor of appellees and to terminate all rights of the grandparent through the adoption judgment, if appropriate.

Conclusion
There are many complex social and public policy issues surrounding the intervention of grandparents into adoption proceedings. However, these issues are best left to the legislature to determine. I believe that the current state of Florida law permits GP/Mother to intervene as a grandparent without a priority interest. Moreover, the child's constitutional rights, and GP/Mother's constitutional rights as a mother of a minor child, support GP/Mother's intervention. Accordingly, I respectfully dissent.