**STATE of Utah, Plaintiff and Respondent,**

v.

**James Montgomery GIBSON, Defendant and Appellant.**

No. 18829.

Supreme Court of Utah.

June 10, 1983.

Richard G. MacDougall, Salt Lake City, for defendant and appellant.

David L. Wilkinson, Atty. Gen., Salt Lake City, for plaintiff and respondent.

DURHAM, Justice:

This is an appeal from a conviction for driving with a revoked driver's license in violation of U.C.A., 1953, §§ 41–2–28 & –30. We affirm.

On January 1, 1981, Trooper Frank Marcellin of the Utah Highway Patrol arrested the appellant James Montgomery Gibson for driving while under the influence of intoxicants (hereafter "DUI") in violation of U.C.A., 1953, §§ 41–6–44 to –44.10. The appellant refused to take a chemical test to determine his blood alcohol content. On April 30, 1981, the appellant was tried and convicted as charged. On June 1, 1981, Trooper Marcellin checked the status of the appellant's driver's license and found that it had in fact been revoked.

On September 21, 1981, at approximately 4:30 p.m., Trooper Marcellin had parked his patrol car facing north on state road 224 (hereafter "SR 224") and was engaged in conversation with a fellow trooper. At this time, Trooper Marcellin observed a brown Porsche automobile proceeding toward him southbound on SR 224 and being driven by the appellant. Knowing that the appellant's driver's license had been revoked and suspecting that it was still revoked, Trooper Marcellin pursued the appellant and pulled him over. Upon questioning the appellant, Trooper Marcellin learned that the appellant's license was in fact still revoked and that the appellant was returning to Park City from Salt Lake City after attempting to obtain a restricted driver's license. See U.C.A., 1953, § 41–2–18(d) (regarding restricted driver's licenses). Trooper Marcellin arrested the appellant for driving while his license was revoked in violation of U.C.A., 1953, §§ 41–2–28 & –30.

Prior to trial in the Fifth Judicial Circuit Court of Summit County, the appellant filed a motion to suppress all of the evidence obtained as a result of the appellant's arrest, claiming that Trooper Marcellin lacked probable cause to stop the appellant. At trial, the appellant continuously objected to any reference by the prosecution to the appellant's prior arrest and conviction for DUI. The appellant did not, however, object to the prosecution's offering into evidence a certified copy of the appellant's driving record, which contained information regarding the appellant's DUI conviction. The circuit court denied the appellant's motion to suppress and convicted the appellant of the crime of driving while his driver's license was revoked. The appellant appealed that decision to the district court, which affirmed the conviction but vacated the sentence. After a new sentencing, the appellant filed the present appeal with this Court.

On appeal, the appellant advances two points of error. First, the appellant contends that the circuit court erred in finding that Trooper Marcellin's stopping of the appellant on September 21, 1981, was not a random stop constituting an unreasonable seizure in violation of the U.S. and Utah Constitutions. See U.S. Const. amend. 4; Utah Const. art. I, § 14. Second, the appel-

lant claims that the circuit court erred in admitting into evidence his prior DUI conviction.

█ In order to determine whether Trooper Marcellin's conduct was an unreasonable seizure in violation of the U.S. and Utah Constitutions, we must balance the promotion of legitimate governmental interests against the intrusion upon the individual's Fourth Amendment interests. *See, e.g., Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 1879–80, 20 L.Ed.2d 889 (1968). *See generally* 3 W. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 10.8 (1978 & Supp.1983). The U.S. Supreme Court has stated:

> The scheme of the Fourth Amendment becomes meaningful only when it is assured that at some point the conduct of those charged with enforcing the laws can be subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular search or seizure in light of the particular circumstances. And in making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search "warrant a man of reasonable caution in the belief" that the action taken was appropriate? Anything less would invite intrusions upon constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches, a result this Court has consistently refused to sanction.

*Terry v. Ohio, supra,* at 21–22, 88 S.Ct. at 1879–80 (citations omitted).

In balancing these interests, the U.S. Supreme Court has stated:

> [A] requirement of reasonable suspicion for stops allows the Government adequate means of guarding the public interest and also protects residents ... from indiscriminate official interference.

*United States v. Brignoni-Ponce,* 422 U.S. 873, 883, 95 S.Ct. 2574, 2581, 45 L.Ed.2d 607 (1975). In further defining the standard

necessary to stop a particular driver, the Court stated:

> When there is not probable cause to believe that a driver is violating any one of the multitude of applicable traffic and equipment regulations—or other articulable basis amounting to reasonable suspicion that the driver is unlicensed or his vehicle unregistered—we cannot conceive of any legitimate basis upon which a patrolman could decide that stopping a particular driver for a spot check would be more productive than stopping any other driver. This kind of standardless and unconstrained discretion is the evil the Court has discerned when in previous cases it has insisted that the discretion of the official in the field be circumscribed, at least to some extent.

*Delaware v. Prouse,* 440 U.S. 648, 661, 99 S.Ct. 1391, 1400, 59 L.Ed.2d 660 (1979) (citations omitted). The Court continued:

> Accordingly, *we hold that except in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his driver's license* and the registration of the automobile *are unreasonable under the Fourth Amendment.*

*Id.* at 663, 99 S.Ct. at 1401 (emphasis added).

In applying the above standards to the present case, we hold that Trooper Marcellin's conduct did not constitute an unreasonable seizure in violation of the appellant's constitutional rights. From Trooper Marcellin's previous encounter with the appellant, he knew that, as late as June 1, 1981, the appellant's driver's license had been revoked pursuant to the DUI conviction. Furthermore, on September 21, 1982, Trooper Marcellin had a "reasonable suspicion" that the appellant's driver's license was still revoked.[1] Thus, under the circum-

---

1. On the appellant's prior arrest for DUI, he refused to take a chemical test. Under Utah's Implied Consent Statute, such a refusal can result in the revocation of one's driver's license for a one-year period. *See* U.C.A., 1953, § 41-6-44.10.

stances, Trooper Marcellin's stopping of the appellant was not a random stop and did not violate the appellant's rights under the U.S. or Utah Constitutions. *See Delaware v. Prouse, supra; United States v. Brignoni-Ponce, supra; Terry v. Ohio, supra. See also State v. Elliott,* Utah, 626 P.2d 423 (1981); *State v. Whittenback,* Utah, 621 P.2d 103 (1980).

■ The defendant's second contention regarding the circuit court's alleged error in admitting into evidence the defendant's prior DUI conviction is not reviewable because it does not raise a constitutional question. Therefore, the district court's decision thereon is final and is not reviewable by this Court. *See State v. Taylor,* Utah, 664 P.2d 439 (1983); Utah Const. art. VIII, § 9; U.C.A., 1953, § 78–3–5 (Supp.1981).

Affirmed. No costs awarded.

STEWART, Justice (concurring):

I fully concur in the opinion of the Court, but like Justice Oaks, feel constrained to add an additional comment. Unlike Justice Oaks, I concurred in *State v. Taylor,* Utah, 664 P.2d 439 (1983), which sustained the constitutionality of the statute authorizing this Court to hear appeals in cases which arise in the circuit courts and which involve constitutional issues. Nevertheless, I agree with Justice Oaks that the caseload of this Court is far too great and that the mandatory requirement imposed by U.C.A., 1953, § 78–3–5, that we hear every appeal from a case originated in a circuit court "involving a constitutional issue" imposes an undue burden on this Court which contributes to our overload and threatens the integrity of the deliberative processes indispensable to the proper functioning of an appellate court. This is all the more true now that it is clear that this Court does have jurisdiction of constitutional issues in cases initiated in a circuit court. There can be little doubt from any objective point of view that legislative action to permit this Court to exercise *discretionary* jurisdiction rather than mandatory jurisdiction in such cases is highly desirable and would make at least a small contribution toward solving the caseload problem of this Court.

HOWE, J., concurs in the concurring opinion of STEWART, J.

OAKS, Justice (concurring):

I concur in the opinion of the Court, and add an additional observation on the jurisdiction of this Court to review traffic cases and other cases commenced in the circuit courts.

Having been unsuccessful in a dissent on this point, I now acquiesce in the majority's holding that this Court has the *constitutional* power to hear an appeal of a case that began in the circuit court and has already been heard on appeal in the district court and does not involve the validity or constitutionality of a statute. *State v. Taylor,* Utah, 664 P.2d 439 (1983). But I protest the *wisdom* of a statute that imposes such jurisdiction on this Court. Discretionary jurisdiction would be another matter, but U.C.A., 1953, § 78–3–5 requires us to hear every such appeal "involving a constitutional issue." In this case, and in others we have received, the only "constitutional issue" is the sufficiency of evidence for a probable cause determination attendant upon a constitutional right. Some such cases pose significant issues for review and ruling by a supreme court, but most—like the present case—are simply applications of well-established principles to various factual situations.

As the Supreme Court of this state staggers under an obligatory jurisdiction that now brings us more than 700 filings per year, I respectfully suggest that the Legislature enact a means of relieving this Court from the statutory duty of reviewing every circuit court case the parties choose to appeal for a second time after they have already received (and lost) one appellate review in the district court. Although cases commenced in the circuit court currently comprise only about one to two percent of our filings, that number is likely to increase in view of our ruling in *State v. Taylor, supra.* In any event, our current overload is most likely to be relieved by the total

effect of various small reductions, and the elimination of obligatory jurisdiction in circuit court cases is a good place to start.

HALL, C.J., concurs in the concurring opinion of OAKS, J.