2003 UT App 335

**STATE of Utah, Plaintiff and Appellant,**

v.

**Charles Bryan CUSHING, Defendant and Appellee.**

No. 20020539–CA.

Court of Appeals of Utah.

Oct. 9, 2003.

Mark L. Shurtleff, Atty. Gen., and Marian Decker, Asst. Atty. Gen., Salt Lake City, for Appellant.

Rudy J. Bautista and Catherine E. Lilly, Salt Lake City, for Appellee.

Before JACKSON, P.J, BILLINGS, Associate P.J. and GREENWOOD, J.

## OPINION

JACKSON, Presiding Judge:

¶1 The State of Utah appeals the trial court's order dismissing with prejudice enhanced counts of possession of methamphetamine, a second degree felony, and possession of marijuana, a class A misdemeanor, in violation of Utah Code Ann. §§ 58–37–8(2)(a)(i), –8(4)(c) (1998); and interference with a peace officer, a class B misdemeanor, in violation of Utah Code Ann. § 76–8–305 (1999). We affirm.

## BACKGROUND

¶2 On May 1, 2001, Detective Jensen of the West Jordan City Police Department observed a white Nissan nearly collide with another car, as well as his own unmarked patrol car. Detective Jensen followed the Nissan and initiated a traffic stop. When Detective Jensen turned on his "wig-wag" and red and blue lights, he recognized the driver of the Nissan to be Rita Morrison, a known drug offender. He did not, however, recognize the passenger in Morrison's car.

¶3 Morrison did not immediately pull over, and Detective Jensen activated his siren. Detective Jensen observed Morris looking back at him, but she continued driving several seconds until she reached the parking lot of an apartment complex known by Detective Jensen as one of the worst complexes in the city for criminal activity. Before Morrison's car came to a complete stop, the passenger door opened and Defendant Charles Bryan Cushing jumped out and began "almost [jogging]" toward the complex.

¶4 Detective Jensen identified himself as a police officer and asked Cushing to stop and stay with the car as a safety precaution. Cushing ignored Detective Jensen's request, instead looking back at Detective Jensen and immediately "launching into a full sprint." Detective Jensen pursued Cushing, but did not apprehend him before he ran into apartment number four. Detective Jensen worried that Cushing was attempting to evade detection of contraband or to obtain a weapon inside the apartment. This worry

stemmed from Cushing's association with a known drug offender in an area known for violent crime, and from Detective Jensen's experience that "the propensity for violence among ... drug users is higher than the norm."

¶ 5 Detective Jensen remained at the door of the apartment to wait for backup officers to arrive. Five minutes later, another man exited the apartment in a nervous and suspicious manner, carrying a garbage bag. The man identified himself as Edward Majera and claimed that another man named Cameron Larsen was also in the apartment, but that no one had run into the apartment. The officers knocked on the apartment door, and Larsen responded, identifying himself as the leaseholder. Larsen also denied that anyone had run into the apartment or that anyone else remained inside. Detective Jensen explained that he had observed Cushing, as yet unidentified by name, run into the apartment, and Larsen nervously admitted that Cushing was hiding under a bed in the apartment.

¶ 6 Detective Jensen obtained Larsen's permission to enter the apartment, and Larsen responded, "Yeah, I don't want him in my apartment.... [Y]ou can go get him out but I'm not going to help you. This guy will kill me." Larsen further informed Detective Jensen that Cushing always had a gun on him and expressed further concern for his safety if Cushing discovered Larsen's cooperation with the police. Majera expressed similar concerns.

¶ 7 Rather than entering the apartment immediately, Detective Jensen opened the front door and called to Cushing inside the apartment. Detective Jensen further indicated that a police dog would be sent in shortly to find Cushing. Several minutes later, Cushing exited the apartment, was handcuffed and placed in a patrol car. He was detained there until police could complete a search of the apartment, with Larsen's verbal and written consent. The police discovered methamphetamine and marijuana in the front room, as well as a pistol near where the drugs were found.

¶ 8 Cushing moved the court to suppress the drugs, and the court granted the motion.

The trial court determined that Detective Jensen's investigation of Cushing was justified by Cushing's unprovoked flight. The trial court further concluded that the otherwise justified *Terry* stop became excessive when Cushing was made to sit handcuffed in a patrol car while police searched the apartment into which he had fled. The trial court also concluded that the excessive detainment tainted Larsen's independent consent to search the apartment.

¶ 9 The State appealed, but we remanded for the trial court to certify that the rulings were final and appealable, pursuant to Utah Code Ann. § 77–18a–1 (1999) and *State v. Troyer,* 866 P.2d 528 (Utah 1993), as substantially impairing the State's case. On remand and pursuant to the State's motion to dismiss with prejudice, the trial court certified the case as final and appealable without holding a hearing.

## ISSUES AND STANDARDS OF REVIEW

■ ¶ 10 Cushing argues the State has no right of appeal and this court has no jurisdiction to hear this case pursuant to Utah Code Ann. § 77–18a–1 (1999) and *State v. Troyer,* 866 P.2d 528 (Utah 1993), because Cushing was not afforded a hearing and a meaningful opportunity to object to the State's motion to dismiss. Whether this court has jurisdiction presents a question of law that we review for correctness. *See Beaver County v. Qwest, Inc.,* 2001 UT 81,¶ 8, 31 P.3d 1147.

■ ¶ 11 The State challenges the trial court's conclusion that police exceeded the scope of an otherwise permissible *Terry* stop by securing Cushing in a patrol car while they searched the apartment. Whether a particular set of facts gives rise to reasonable suspicion is a question of law that we review for correctness. *See State v. Chapman,* 921 P.2d 446, 450 (Utah 1996). "The legal standard for reasonable suspicion, however, 'is highly fact dependent and the fact patterns are quite variable.' The legal standard therefore conveys a measure of discretion to the trial court in our application of the cor-

rectness standard to a given set of facts."
*Id.* (citations omitted).[1]

## ANALYSIS

### I. Jurisdiction

¶ 12 We first address whether we have jurisdiction to hear the State's appeal. Cushing argues that, pursuant to Utah Code Ann. § 77–18a–1 (1999) and *State v. Troyer,* 866 P.2d 528 (Utah 1993), the trial court must hold a hearing to determine whether suppression of the drug evidence substantially impairs the State's case. The trial court did not hold a hearing. Further, Cushing argues, although the drug charges could not stand without the drug evidence, the remaining charge of interference with a peace officer could still be brought. Thus, Cushing argues, the case should not have been dismissed and the suppression ruling was neither final nor appealable, depriving this court of jurisdiction.

¶ 13 Utah law provides that "[a]n appeal may be taken by the prosecution from ... (e) an order of the court granting a pretrial motion to suppress evidence when upon a petition for review the appellate court decides that the appeal would be in the interest of justice." Utah Code Ann. § 77–18a–1(2). However, such an appeal is limited to those cases where the suppression ruling substantially impairs the State's case:

> We believe that trial court certification is more effective than relying on the prosecution['s assurances that the suppression ruling substantially impairs the State's case] because it gives the defendant a chance to object before the dismissal is entered while still permitting review by the appellate court. We will therefore review suppression orders on appeal from a dismissal only where the trial court certifies that the evidence suppressed substantially impairs the prosecution's case.

*Troyer,* 866 P.2d at 531. The purpose of requiring a dismissal with prejudice is to bar the State from refiling charges against the defendant if the suppression ruling is affirmed on appeal. *See id.* These requirements underscore the fact that the prosecution's ability to appeal is substantially narrower, by legislative design, than that of a defendant. *See id.* Otherwise, " 'the State [would have] an appeal of right from virtually every adverse pretrial order,' for the State will almost always be able to dismiss a case, appeal from that dismissal, and then refile the charges, whatever the outcome of the appeal." *Id.* at 530–31 (quoting *State v. Waddoups,* 712 P.2d 223, 224 (Utah 1985)).

¶ 14 Cushing argues that because the trial court did not hold a hearing on the State's motion to dismiss, he was not allowed "a chance to object before the dismissal [was] entered." *Id.* at 531. Had he been afforded such an opportunity, Cushing maintains, he would have objected on grounds that, although the drug charges could no longer stand, the charge of interference with a peace officer yet remained. The State could have moved forward on that charge, Cushing argues, and the suppression order should not, therefore, be considered final and appealable and this court has no jurisdiction over the State's appeal.

¶ 15 We are not persuaded by Cushing's argument for three reasons. First, Cushing's argument seems to assume that *Troyer* considered a hearing the only appropriate venue in which a defendant may object to the State's motion to dismiss. However, we read nothing in *Troyer* that would lend itself to this interpretation. Objections may be made on paper as well as in person.

¶ 16 Second, Cushing's argument misconstrues the *Troyer* requirements. Cushing argues that because a minor charge remained unaffected by the suppression order the State could still go forward and the suppression order thus is not final or appealable. However, *Troyer* requires *substantial* impairment to the State's case, rather than *complete* impairment. *See id.* The suppressed drug evidence provided the basis for at least two-thirds of the State's case, includ-

---

1. The State also challenged the trial court's conclusion that the evidence was tainted by arguing that the evidence was seized pursuant to a valid third-party consent. It withdrew that challenge in its reply brief, however, because it became clear that the consent argument had not properly been preserved for our review.

ing an enhanced second-degree felony charge for methamphetamine possession and an enhanced class A misdemeanor charge for marijuana possession. These two charges carry possible sentences of "not less than one year nor more than 15 years," and one year. *See* Utah Code Ann. §§ 76–3–203, –204(1) (1999). After the suppression order, however, Cushing's remaining class B misdemeanor charge carried a possible sentence of a six month term. *See id.* § 76–3–204(2). Thus, we conclude the State's case was substantially impaired, and the trial court properly dismissed the case regardless of the remaining minor charge.

█ ¶ 17 Third, *Troyer* itself does not require rigid, mechanical application. After concluding that "trial court certification ... will be required before the State may appeal and seek review of suppression orders after dismissal," the supreme court immediately stated, "[i]n this case, however, we see no need to remand the case to the trial court for certification. It is undisputed that the cumulative effect of the suppression orders left the prosecution unable to proceed." *Troyer,* 866 P.2d at 531–32. Thus, jurisdiction is conferred upon an appellate court pursuant to a final appealable order if it has sufficient indicia of substantial impairment to the State's case. Where the supreme court refused in *Troyer* to remand the case pursuant to its own newly-proclaimed rule, we would be misguided indeed to refuse jurisdiction simply because the trial court did not hold a hearing on the motion.

¶ 18 Accordingly, we conclude the trial court's certification was sufficient under *Troyer,* the dismissal was a final appealable order, and we thus have jurisdiction over the State's appeal.

## II. The Trial Court's Suppression Order

█ ¶ 19 The trial court concluded the initial traffic stop was lawful because Detective Jensen observed Morrison driving erratically, giving rise to a reasonable belief that she was intoxicated. It noted that the initial stop "only justified an investigation of Ms. Morrison's actions [and that] any investigation of Mr. Cushing must be based on a separate articulable suspicion." The trial court concluded that Cushing's "unprovoked flight in a high crime area gave rise to an articulable suspicion of wrongdoing" justifying a *Terry* stop.

[S]topping an automobile and detaining its occupants constitute a seizure within the meaning of [the Fourth] Amendment[ ], even [if] the purpose of the stop is limited and the resulting detention quite brief.... However, what the Constitution forbids is not all searches and seizures, but unreasonable searches and seizures.

In determining whether the seizure and search were unreasonable, we ask, first, whether the officer's action was justified at its inception and, second, whether it was reasonably related in scope to the circumstances which justified the interference in the first place.

*State v. Lafond,* 2003 UT App 101,¶¶ 11–12, 68 P.3d 1043 (quotations and citations omitted). "If reasonable suspicion of more serious criminal activity ... arise[s], the scope of the stop is still limited. The officers must diligently [pursue] a means of investigation that [is] likely to confirm or dispel their suspicions quickly, during which time it [is] necessary to detain the defendant." *State v. Lopez,* 873 P.2d 1127, 1132 (Utah 1994) (quotations and citations omitted) (second, third, and fourth alterations in original). For example, once the officers apprehend a suspect pursuant to reasonable suspicion, they may frisk the suspect in order to dispel or confirm whether the suspect is carrying a weapon. *See generally Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

█ ¶ 20 Neither party challenges the trial court's conclusion that the initial traffic stop was justified. Further, we agree with the trial court that Cushing's flight in a high crime area to evade Detective Jensen gave rise to reasonable suspicion of more serious criminal activity sufficient to detain him. *Illinois v. Wardlow,* 528 U.S. 119, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000), resolves the issue. In that case, the defendant fled unprovoked in an area known for a high incidence of drug trafficking. These two considerations alone were enough for the United States Supreme Court to determine that reasonable suspicion existed.

An individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime. But officers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation. Accordingly, we have previously noted the fact that the stop occurred in a "high crime area" among the relevant contextual considerations in a *Terry* analysis.

*Id.* at 124, 120 S.Ct. at 676 (citations omitted). Further, "[h]eadlong flight—wherever it occurs—is the consummate act of evasion: [i]t is not necessarily indicative of wrongdoing, but it is certainly suggestive of such." *Id.*

¶ 21 In this case, Cushing fled unprovoked from a DUI stop in an area known by the detective to be a high crime area. Thus, this case is indistinguishable from *Wardlow*, and the apprehension and detention of Cushing does not pose a problem. *See also United States v. Brignoni–Ponce*, 422 U.S. 873, 885, 95 S.Ct. 2574, 2582, 45 L.Ed.2d 607 (1975) (stating "obvious attempts to evade officers can support a reasonable suspicion").

¶ 22 However, the scope of that reasonable suspicion "is still limited." *State v. Lopez*, 873 P.2d 1127, 1132 (Utah 1994). The officers may not pursue a line of investigation not "reasonably related in scope to the circumstances which justified the interference in the first place." *Lafond*, 2003 UT App 101 at ¶ 12, 68 P.3d 1043. This limited justification to detain a suspect does not give officers carte blanche investigative authority. It must be particularly noted that police authority to detain a suspect on reasonable suspicion is a creature of exigency. *See Terry*, 392 U.S. at 20, 88 S.Ct. at 1879. Once the suspect is in police custody, the threat is dispelled, and the officers find nothing giving rise to an expanded scope of suspicion or probable cause, police investigative authority generally dissolves. *See id.* at 25–26, 88 S.Ct. at 1882; *State v. Chapman*, 921 P.2d 446, 452–53 (Utah 1996) (stating unduly long detention may cast doubt upon reasonableness); *Lopez*, 873 P.2d at 1132.

¶ 23 In this case, police handcuffed Cushing and searched his person to determine whether he had a weapon or if any drugs were readily apparent. Upon determining that Cushing had neither drugs nor weapons, they placed him in a patrol car to wait while they expanded their investigation by searching his apartment. Police authority to detain Cushing and continue their investigation ended when their suspicions that Cushing had contraband or dangerous weapons on his person were dispelled. "Once the purpose of the initial stop is concluded, ... the person must be allowed to depart. ' "Any further temporary detention for [investigation] after [fulfilling] the purpose for the initial ... stop" ' constitutes an illegal seizure, unless an officer has probable cause or a reasonable suspicion of a further illegality." *State v. Hansen*, 2002 UT 125, ¶ 31, 63 P.3d 650 (quoting *State v. Godina–Luna*, 826 P.2d 652, 655 (Utah Ct.App.1992) (quoting *State v. Robinson*, 797 P.2d 431, 435 (Utah Ct.App.1990))) (second alteration in original).

¶ 24 The State argues that "reasonable suspicion of further illegality," *id.*, existed because Cushing's roommates perceived him to be a continuing threat. As noted above, however, this concern was neutralized when police finally removed Cushing from the apartment, cuffed him, secured him in a patrol car, and ultimately found nothing illegal on him.

¶ 25 Even assuming, however, that Cushing's temporary foray into his apartment gave rise to reasonable suspicion because it allowed him time to secrete contraband or weapons, neither reasonable suspicion nor probable cause can justify the warrantless entry of a home. "It is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable.... 'It is settled doctrine that probable cause for belief that certain articles subject to seizure are in a dwelling cannot of itself justify a search without a warrant.'" *Payton v. New York*, 445 U.S. 573, 586, 588 n. 26, 100 S.Ct. 1371, 1380–81, 63 L.Ed.2d 639 (1980) (citations omitted). If probable cause to believe a search of the home will yield evidence

of contraband is insufficient, then reasonable suspicion certainly will not do:

> "[T]he Fourth Amendment would permit seizures for the purpose of fingerprinting, if there is reasonable suspicion that the suspect has committed a criminal act, if there is a reasonable basis for believing that fingerprinting will establish or negate the suspect's connection with that crime, and if the procedure is carried out with dispatch. Of course, neither reasonable suspicion nor probable cause would suffice to permit the officers to make a warrantless entry into a person's house for the purpose of obtaining fingerprint identification."

*Hayes v. Florida,* 470 U.S. 811, 817, 105 S.Ct. 1643, 1647, 84 L.Ed.2d 705 (1985) (citation omitted).[2]

¶ 26 Thus, the search of Cushing's person and his detainment in the patrol car cut off all possible justifications for entering and searching his apartment. That search was in no way "reasonably related in scope to the circumstances which justified [Cushing's detainment] in the first place." *State v. Lafond,* 2003 UT App 101,¶ 12, 68 P.3d 1043 (quotations and citations omitted). Although the police were justified in the initial stop and were justified in pursuing and briefly detaining Cushing based on his evasive behavior, they were entirely unjustified in expanding the scope of their search once their reasonable suspicions were dispelled. Accordingly, the trial court correctly suppressed the evidence seized pursuant to that unreasonable search, and we affirm.

¶ 27 WE CONCUR: JUDITH M. BILLINGS, Associate Presiding Judge, and PAMELA T. GREENWOOD, Judge.

---

2. The analysis in Cushing's brief goes further, arguing that his roommates' consent to search the apartment was tainted by the illegality of Cushing's continued detention. He maintains police exploited the improper detention in order to obtain the consent of his roommates. However, Cushing's continued detention itself did not taint the consent because the police undoubtedly would have sought and obtained consent even if Cushing had been released. Rather, the consent did not justify the warrantless entry of the apartment because police were not justified in continuing their investigation once their suspicions about weapons or contraband on Cushing's person were dispelled.