2011 UT App 350

**STATE of Utah, Plaintiff and Appellant,**

v.

**Patricia Salazar HOUSTON, Defendant and Appellee.**

**No. 20100246–CA.**

Court of Appeals of Utah.

Oct. 14, 2011.

---

Mark L. Shurtleff and Kris C. Leonard, Salt Lake City, for Appellant.

Elizabeth Hunt, Salt Lake City, for Appellee.

Before Judges ORME, THORNE, and CHRISTIANSEN.

## OPINION

CHRISTIANSEN, Judge:

¶ 1 The State appeals the district court's grant of Defendant Patricia Salazar Houston's motion to suppress evidence seized after a traffic stop. We reverse and remand.

## BACKGROUND

¶ 2 In November 2008, Deputy Avery Stewart responded to a report of retail theft at a grocery store in Providence, Utah. While on site, Deputy Stewart spoke to Trooper Phil Rawlinson, who was off duty at the time. While the two were speaking, Trooper Rawlinson observed Houston driving her car out of the grocery store parking lot. Trooper Rawlinson had previously arrested and cited Houston on numerous occasions. Twice in 2006, he was involved in arresting Houston for driving under the influence, and in 2007, he issued Houston two citations for driving under a revoked license. When arresting Houston in 2006, Trooper Rawlinson discovered that Houston's license was revoked until 2012. In addition, just a few days before

seeing Houston in November 2008, Trooper Rawlinson verified in a Driver License Division computer database that Houston's license was still revoked.

¶ 3 Upon seeing her drive out of the grocery store parking lot, Trooper Rawlinson identified Houston by name to Deputy Stewart, telling him, "That's Patricia Houston driving that vehicle, and she's revoked for alcohol if you want to go stop her." Deputy Stewart followed Houston out of the parking lot and down the street. Although he did not observe any traffic violations, he initiated a traffic stop not far from the grocery store. Deputy Stewart did not receive any information from dispatch verifying Trooper Rawlinson's statements about the status of Houston's driver license before he initiated the stop.

█ ¶ 4 Based on the traffic stop, the State subsequently charged Houston with (1) driving under the influence, *see* Utah Code Ann. § 41–6a–502(1)(a) (Supp.2010); (2) driving with breath alcohol concentration greater than .08 grams, *see id.* § 41–6a–502(1)(c); (3) possessing an open container in her vehicle, *see id.* § 41–6a–526(2); and (4) driving on a suspended or revoked license, *see* Utah Code Ann. § 53–3–227(3)(a) (Supp. 2010).[1] Houston filed a motion to suppress all of the State's evidence, arguing, inter alia, that Deputy Stewart lacked reasonable suspicion to initiate a level two traffic stop[2] because he had not first verified Trooper Rawlinson's information about the status of Houston's driver license.

¶ 5 At the suppression hearing, the district court heard testimony from Trooper Rawlinson and Deputy Stewart. The court granted Houston's motion and suppressed all of the evidence obtained as a result of the traffic stop based on its conclusion that Deputy Stewart lacked reasonable suspicion to stop Houston. The court faulted Deputy Stewart for relying on Trooper Rawlinson's limited

---

1. Except where noted, we cite the current version of the Utah Code for the reader's convenience because the relevant portions have not changed since the events underlying Houston's convictions occurred.

2. "A level two encounter [with a law enforcement official] involves an investigative detention that is usually characterized as brief and nonintrusive." *State v. Hansen,* 2002 UT 125, ¶ 35, 63 P.3d 650. A traffic stop is typically considered to be a level two encounter. *See id.* ¶ 37.

information instead of verifying with dispatch that Houston's license was still revoked. Immediately after granting Houston's motion to suppress, the district court told the prosecution, "[I]t's obvious you have a serious problem. You ... can cho[o]se how [you] want to proceed from here but I don't see how [you] can proceed without the information from the stop." The prosecutor moved the court "to dismiss without prejudice," and the district court granted that motion. The State now appeals the district court's suppression order.

## ISSUES AND STANDARDS OF REVIEW

■ ¶ 6 We begin by addressing whether this court has jurisdiction to hear the merits of the State's appeal. *See generally Housing Auth. of Salt Lake v. Snyder*, 2002 UT 28, ¶ 11, 44 P.3d 724 ("[B]ecause it is a threshold issue, we address [the subject matter] jurisdiction[ ] question[ ] before resolving other claims."). "An appellate court's determination of whether it has jurisdiction to hear an appeal is a question of law." *State v. Norris*, 2002 UT App 305, ¶ 5, 57 P.3d 238 (internal quotation marks omitted).

■ ¶ 7 The State challenges the district court's ruling to suppress the evidence, arguing that Deputy Stewart had reasonable suspicion to initiate the traffic stop. "In an appeal from a trial court's [decision on a] motion to suppress evidence, we review the trial court's factual findings for clear error[,] and we review its conclusions of law for correctness." *Salt Lake City v. Bench*, 2008 UT App 30, ¶ 5, 177 P.3d 655 (second alteration in original) (internal quotation marks omitted), *cert. denied*, 199 P.3d 367 (Utah 2008).

3. After the State appealed the district court's suppression order, Houston sought to dismiss the appeal. In an order dated May 14, 2010, we denied Houston's motion to dismiss and reserved a decision on the propriety of the State's appeal pending full briefing on the issue of when the State may appeal as a matter of right.

4. Houston focuses on the jurisdictional issue, arguing that this appeal is not properly before us because the State did not request dismissal with

## ANALYSIS

### I. This Court Has Jurisdiction to Decide the State's Appeal

■ ¶ 8 On appeal, Houston urges us to dismiss the State's appeal for lack of jurisdiction because the case was not dismissed with prejudice, as is required in *State v. Troyer*, 866 P.2d 528, 531 (Utah 1993).[3] By contrast, the State asserts that this court has jurisdiction because *Troyer* became inapplicable after the amendment of Utah Code section 77–18a–1 in 2005. *See* Utah Code Ann. § 77–18a–1(3)(b) & amend. notes (2008). We agree with the State that the amendment of the statute superseded *Troyer*, and thus, we rely entirely on subsection (3)(b) to determine whether we have jurisdiction to hear the State's appeal of the district court's suppression order. We determine that we have jurisdiction under subsection (3)(b) because the district court concluded that the State's case was substantially impaired and correctly granted the State's motion to dismiss.[4]

¶ 9 In 1993, before Utah Code section 77–18a–1 was amended, the statute provided that the State's right to appeal, as pertinent here, was limited to an appeal of "a final judgment of dismissal" or "an order of the court granting a pretrial motion to suppress evidence when upon a petition for review the appellate court decides that the appeal would be in the interest of justice," *id.* § 77–18a–1(2)(a), (e) (Supp.1993). When interpreting this statute, the supreme court in *Troyer* held that it would "review suppression orders on appeal from a dismissal only where the trial court certifies that the evidence suppressed substantially impairs the prosecution's case" and where "the prosecution request[s] dismissal with prejudice." *Troyer*, 866 P.2d at 531. The supreme court explained that these two prongs "preserve[d] the State's statutory right to obtain review of

prejudice. In so doing, she does not explicitly disagree that the suppression order substantially impaired the State's case. But even assuming we have misconstrued Houston's argument on this point, we explain in the body of this opinion why the suppression order substantially impaired the State's case pursuant to Utah Code section 77–18a–1(3)(b), *see* Utah Code Ann. § 77–18a–1(3)(b) (2008).

suppression orders that amount to final judgments and at the same time ensure[d] that defendants [would] be shielded from potential prosecutorial manipulation." *Id.*

¶ 10 The *Troyer* court was primarily concerned with balancing the State's right to seek discretionary review from an adverse pretrial order against the State's seemingly unlimited right to appeal after a final judgment of dismissal. *See id.* at 530–31 (noting that if it permitted the State an appeal of right after the State sought "review of suppression orders by dismissing a case and then appealing from that dismissal," it " 'would give the State an appeal of right from virtually every adverse pretrial order, for the State will almost always be able to dismiss a case, appeal from that dismissal, and then refile the charges, whatever the outcome of the appeal.' ") *Id.* at 530–31 (quoting *State v. Waddoups*, 712 P.2d 223, 224 (Utah 1985)); *accord State v. Cushing*, 2004 UT App 73, ¶ 13, 88 P.3d 368.

¶ 11 The parties do not dispute that when the legislature amended Utah Code section 77–18a–1 in 2005, it codified most of *Troyer's* first prong as subsection 77–18a–1(3)(b). *See* Utah Code Ann. § 77–18a–1(3)(b) (2008). The legislature provided, in pertinent part, that "[t]he prosecution may, as a matter of right, appeal from[ ] . . . a pretrial order dismissing a charge on the ground that the court's suppression of evidence has substantially impaired the prosecution's case." *Id.* Houston contends that, to invoke an appellate court's jurisdiction, the State must satisfy *Troyer's* second prong, requiring the prosecutor to request a dismissal with prejudice, even though that requirement is not explicitly codified in the current statute.

 ¶ 12 "Our primary goal in construing statutory language is to give effect to 'the true intent and purpose of the Legislature,' and the best tool for doing so is generally the plain language of the statute itself." *Miller v. State*, 2010 UT App 25, ¶ 12, 226 P.3d 743 (quoting *State v. Martinez*, 2002 UT 80, ¶ 8, 52 P.3d 1276).

When examining the plain language, we must assume that each term included in the ordinance was used advisedly. . . . [S]tatutory construction presumes that the expression of one should be interpreted as the exclusion of another. Thus, we should give effect to any omission in the ordinance language by presuming that the omission is purposeful.

*Carrier v. Salt Lake Cnty.*, 2004 UT 98, ¶ 30, 104 P.3d 1208 (citations and internal quotation marks omitted). Additionally, "[w]e presume the Legislature is aware of our case law." *Olseth v. Larson*, 2007 UT 29, ¶ 39, 158 P.3d 532. The plain language of section 77–18a–1 reveals that the State "may, as a matter of right, appeal from[ ] . . . a pretrial order dismissing a charge on the ground that the court's suppression of evidence has substantially impaired the prosecution's case." Utah Code Ann. § 77–18a–1(3)(b).

¶ 13 By incorporating into subsection 3(b) the substantial impairment requirement, it appears the legislature was aware of the *Troyer* decision but chose not to likewise incorporate any requirement that the prosecutor explicitly request a dismissal with prejudice. *See Olseth*, 2007 UT 29, ¶ 39, 158 P.3d 532; *Carrier*, 2004 UT 98, ¶ 30, 104 P.3d 1208. Therefore, we assume that the legislature purposefully omitted the *Troyer* dismissal-with-prejudice requirement. Consequently, the State may appeal from an order suppressing evidence as a matter of right even if the prosecutor did not move the district court to dismiss the case with prejudice, as long as "the court's suppression of evidence has substantially impaired the prosecution's case." *See* Utah Code Ann. § 77–18a–1(3)(b).

 ¶ 14 We view the omission of the dismissal-with-prejudice requirement from the statute as a logical rule. "Ordinarily, dismissal with prejudice constitutes a final judgment." *Gardner v. Board of Cnty. Comm'rs of Wasatch Cnty.*, 2008 UT 6, ¶ 43, 178 P.3d 893. Thus, were we to require *Troyer's* second prong, in addition to subsection (3)(b), the State would essentially be required to meet subsection 77–18a–1(3)(a), which provides that the State "may, as a matter of right, appeal from[ ] . . . a final judgment of dismissal," Utah Code Ann. § 77–18a–1(3)(a). This would render subsection (3)(b) superfluous.

¶ 15 Moreover, as to the second prong of *Troyer*, in a case in which the court's suppression of the State's evidence substantially impaired its case and the suppression ruling was upheld on appeal, further prosecution of the case implicates a defendant's right to due process. *See State v. Pacheco–Ortega,* 2011 UT App 186, ¶ 11, 257 P.3d 498 (discussing *State v. Brickey,* 714 P.2d 644 (Utah 1986), which considered the "proper balance between the State's right to prosecute criminal offenses and the defendant's due process rights"). This is true regardless of whether the prosecutor moved for dismissal with or without prejudice, and regardless of the court's order for dismissal without prejudice. Though a criminal defendant may be rightly concerned that, if his or her charges are dismissed, the State may appeal the dismissal and then, if unsuccessful on appeal, refile the same charges, that concern is clearly tempered by the constitutional constraints placed upon the prosecution in determining whether to refile. *See id.* For example, in *State v. Brickey,* 714 P.2d 644, the Utah Supreme Court clarified that "due process considerations prohibit a prosecutor from refiling criminal charges earlier dismissed [at a preliminary hearing] for insufficient evidence unless the prosecutor can show that new or previously unavailable evidence has surfaced or that other good cause justifies refiling." [5] *Id.* at 647. Accordingly, we determine that this court has jurisdiction to hear the merits of the State's appeal in spite of the dismissal without prejudice.

## II. Reasonable Suspicion Justified the Traffic Stop

¶ 16 The State argues that the district court erred when ruling that Deputy Stewart lacked reasonable suspicion to support the traffic stop. A traffic stop is considered a "seizure" and is therefore protected under the United States Constitution. *See*

U.S. Const. amend. IV (protecting citizens from "unreasonable searches and seizures"); *Salt Lake City v. Bench,* 2008 UT App 30, ¶ 7, 177 P.3d 655, *cert. denied,* 199 P.3d 367 (Utah 2008). A police officer must have reasonable suspicion to justify a traffic stop, meaning that he or she must have "reasonable suspicion, prior to the stop, that a person is engaging in, or has engaged in, criminal behavior." *Bench,* 2008 UT App 30, ¶ 7, 177 P.3d 655; *cf.* Utah Code Ann. § 77-7-15 (2008) ("A peace officer may stop any person in a public place when he has a reasonable suspicion to believe he has committed or is in the act of committing or is attempting to commit a public offense and may demand his name, address and an explanation of his actions.").

¶ 17 Typically, the "officer's own observations and inferences" support his or her reasonable suspicion determination. *See State v. Case,* 884 P.2d 1274, 1276–77 (Utah Ct.App.1994). "However, 'under certain circumstances the officer may rely on other sources of information' such as 'bulletins[ ] or flyers received from other law enforcement sources,' so long as 'the police who *issued* the flyer or bulletin possessed a reasonable suspicion justifying a stop.'" *State v. Roybal,* 2010 UT 34, ¶ 14, 232 P.3d 1016 (alteration in original) (quoting *Case,* 884 P.2d at 1277). A "flyer" has been defined as "any information intended to prompt investigation that is transmitted through police channels, regardless of method." *Id.* (internal quotation marks omitted). Also, "the collective knowledge doctrine (sometimes referred to as the fellow officer rule) allows the objectively reasonable articulable suspicion to be based on the totality of the circumstances and the collective knowledge of all the officers involved." *State v. Prows,* 2007 UT App 409, ¶ 13, 178 P.3d 908 (internal quotation marks omitted). In *Prows,* we held that if one

---

5. After granting Houston's motion to suppress, the district court recognized that it would be almost impossible for the State to proceed, stating, "[I]t's obvious you have a serious problem. You ... can cho[o]se how [you] want to proceed from here but I don't see how [you] can proceed without the information from the stop." Likewise, in his argument at the suppression hearing, defense counsel argued that there was no reasonable suspicion for the traffic stop, and therefore, "that leaves the State without a case." In fact, the State conceded at oral argument before this court that because all of the State's evidence from the stop was suppressed, the State has no other evidence to support three out of four of its charges against Houston and is therefore not in a position to refile the charges.

officer had reasonable suspicion to effectuate a level two traffic stop and passed that information along to a second officer, under the collective knowledge doctrine, that reasonable suspicion was imputed to the second officer and justified the second officer's level two traffic stop. *See id.* ¶¶ 14, 19.

¶ 18 Thus, if Trooper Rawlinson possessed reasonable suspicion that Houston was driving a vehicle with a revoked driver license, then that reasonable suspicion can be imputed to Deputy Stewart. This is true regardless of whether Trooper Rawlinson articulated how he obtained his knowledge about Houston's driver license to Deputy Stewart. *See Case,* 884 P.2d at 1277 & n. 5 (emphasizing that only the originating officer is required to have reasonable suspicion and that the second officer may accept the information "at face value").

¶ 19 In *State v. Gibson,* 665 P.2d 1302 (Utah 1983), *cert. denied,* 464 U.S. 894, 104 S.Ct. 241, 78 L.Ed.2d 231 (1983), the Utah Supreme Court upheld a level two traffic stop under similar circumstances. *See id.* at 1303–04. Approximately six months after arresting the defendant for driving while under the influence of intoxicants, the arresting officer checked the status of the defendant's driver license and learned that it was revoked. *See id.* at 1303. Approximately three months after having discovered that the defendant's license had been revoked, the same arresting officer, seeing the defendant drive by, quickly pulled the defendant over based on the officer's suspicion that the license was still revoked. *See id.* The arresting officer confirmed that it was still revoked and arrested the defendant. *See id.* In considering the defendant's challenge to the constitutionality of the traffic stop, the supreme court held that the arresting officer had reasonable suspicion to justify the stop because he had checked the status of the defendant's license just three months prior to the second arrest. *See id.* at 1304–05.

¶ 20 Like the *Gibson* court, we determine that Trooper Rawlinson had sufficient personal interactions with and knowledge about Houston, including a recent verification of her license's status, to raise reasonable suspicion that Houston was driving on a revoked license. The record indicates that Trooper Rawlinson verified the status of Houston's license on the Driver License Division computer a few days prior to Houston's November 2008 arrest, which the district court acknowledged in voicing its concern that Deputy Stewart had not obtained this precise information from Trooper Rawlinson before stopping Houston. Upon seeing Houston drive out of the lot, Trooper Rawlinson was able to identify her by name to Deputy Stewart and articulate that she was driving on a revoked license.

¶ 21 In spite of the possibility of a glitch in the Driver License Division computer that Trooper Rawlinson used or that Houston's license could have been reinstated just after Trooper Rawlinson used the computer, which were concerns articulated by the district court, we conclude that Trooper Rawlinson had reasonable suspicion that Houston's license was still revoked. Because Trooper Rawlinson had reasonable suspicion that Houston was driving a vehicle with a revoked driver license, that reasonable suspicion is imputed to Deputy Stewart. *See Prows,* 2007 UT App 409, ¶ 14, 178 P.3d 908. Therefore, Deputy Stewart had reasonable suspicion that Houston was driving on a revoked license, which justified the traffic stop.

## CONCLUSION

¶ 22 We determine that this court has jurisdiction to decide the State's appeal because the requirements of Utah Code section 77–18a–1(3)(b) were satisfied. We conclude that Trooper Rawlinson, and by extension Deputy Stewart, had reasonable suspicion to justify Houston's level two traffic stop. The district court incorrectly applied reasonable suspicion law to the facts of this case to conclude that Deputy Stewart lacked reasonable suspicion to justify Houston's stop. We therefore reverse and remand so that the district court may conduct proceedings consistent with this opinion.

¶ 23 WE CONCUR: GREGORY K. ORME and WILLIAM A. THORNE JR., Judges.