**2015 UT App 184**

# THE UTAH COURT OF APPEALS

TINA LINDSAY,
Petitioner and Appellant,

*v.*

BRETT WALKER, SACHA WALKER, WINSOME GRANT, COLIN GRANT,
JUNE GRANT, AND RON WILKINSON,
Respondents and Appellees.

Opinion
No. 20140091-CA
Filed July 30, 2015

Fourth District Court, Provo Department
The Honorable David N. Mortensen
No. 094402434

Rick L. Sorensen, Attorney for Appellant

Terry L. Hutchinson, Attorney for Appellees Brett
Walker, Sacha Walker, Colin Grant, and June Grant

Nathan S. Shill, Attorney for Appellee Ron
Wilkinson

JUDGE JOHN A. PEARCE authored this Opinion, in which JUDGES
MICHELE M. CHRISTIANSEN and KATE A. TOOMEY concurred.

PEARCE, Judge:

¶1 Tina Lindsay appeals the district court's dismissal of her petition for grandparent visitation rights to the minor child O.G. Lindsay also appeals the district court's denial of her motion seeking relief from summary judgment on her civil conspiracy cause of action. We affirm.

BACKGROUND[1]

¶2     Winsome Grant (Mother) gave birth to O.G. in October 2005. In March 2006, Mother filed a paternity action in the district court naming Lindsay's son, Bo Driggs (Father), as O.G.'s father and seeking orders on child support, visitation, and related issues. Mother and Father stipulated to a temporary order in the paternity action that gave Father visitation rights.

¶3     Despite the stipulation, Father had difficulty visiting O.G. due to the intransigence of Mother and her parents, Colin and June Grant (the Grants). Mother and the Grants "used every ploy imaginable" to deny Father access to O.G., including changing their cell phone number, refusing to answer their home phone, and refusing to answer the door for Father, Lindsay, or even the police. In May or June 2007, Mother "signed over" her rights to O.G. to the Grants. When Father contacted the Grants to exercise his court-ordered visitation, Colin Grant told him that he would have to sign over his parental rights to the Grants to obtain

---

1. This appeal concerns a claim for grandparent visitation that was resolved by a motion to dismiss and a cause of action for civil conspiracy that was resolved by a motion for summary judgment. Accordingly, we recite the background facts in the light most favorable to Lindsay as the nonmoving party. *See Hunsaker v. American HealthCare Capital*, 2014 UT App 275, ¶ 9, 340 P.3d 788 ("When determining whether the trial court correctly granted a motion to dismiss, we accept the factual allegations in the complaint as true and consider them, and all reasonable inferences to be drawn from them, in the light most favorable to the nonmoving party." (citation and internal quotation marks omitted)); *Faucheaux v. Provo City*, 2015 UT App 3, ¶ 2 n.3, 343 P.3d 288 ("On an appeal from a summary judgment, we recite the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party.").

visitation. Father refused. Father last saw O.G. in June or July 2007.

¶4    In July 2007, the Grants arranged for Mother to leave the country. O.G. remained in Utah with the Grants. Father obtained a writ of assistance and a pickup order from the district court, which required Mother to attend a September 2007 hearing. Mother did not personally attend the hearing, but her attorney Ron Wilkinson did. The district court left the temporary orders in place and set another hearing for November 2007.

¶5    In October 2007, Colin Grant and Wilkinson sent O.G. to Mother in New Zealand. Mother, the Grants, and Wilkinson failed to appear at the November hearing. The district court awarded temporary custody of O.G. to Father. Father and Lindsay attempted to locate O.G. but were unable to do so. At some point, O.G. was returned to the United States, but neither Father nor Lindsay was allowed to see the child.

¶6    In June 2008, Father died. In September 2008, the district court held a show cause hearing in the paternity action to consider whether the case should be dismissed. Lindsay attended the hearing. The district court dismissed the paternity action in light of Father's death. At this time, Lindsay informed Wilkinson that she wanted formal grandparent visitation with O.G. Wilkinson responded that the Grants had no problem with that, that he had the authority to set up grandparent visitation with Lindsay, and that he would call Lindsay to iron out the details. Relying on Wilkinson's representations, Lindsay did not file a petition for grandparent visitation.[2]

¶7    Lindsay attempted to follow up with Wilkinson and the Grants to secure visitation with O.G. Lindsay eventually retained her own attorney, who contacted Wilkinson's office to solidify the visitation arrangement. Only then did Lindsay learn

---

2. We again note that we recite the facts in the light most favorable to Lindsay as the nonmoving party.

that Mother's sister and brother-in-law, Sacha and Brett Walker, had adopted O.G. Lindsay alleges that Mother, the Grants, the Walkers, and Wilkinson conspired to complete the adoption without notice to Lindsay and before she could secure formalized visitation.

¶8 The Walkers refused to allow Lindsay visitation or contact. Lindsay brought this action in the district court, seeking grandparent visitation with O.G. Lindsay also sought money damages against Mother, the Grants, the Walkers, and Wilkinson on multiple theories, including civil conspiracy.

¶9 Early in the litigation, the district court granted a motion to dismiss Lindsay's grandparent visitation claim. The district court concluded that O.G.'s adoption by the Walkers cut off any rights to visit O.G. that Lindsay might have had under Utah law. The district court also concluded that Lindsay lacked standing to seek grandparent visitation after the adoption and dismissed that claim. The district court denied the motion to dismiss as to Lindsay's other causes of action, including civil conspiracy.

¶10 After the parties conducted discovery, the defendants moved for summary judgment on Lindsay's remaining claims.[3] At a hearing on the motion, it became apparent that Lindsay's memorandum opposing summary judgment on the civil

---

3. We note that the discovery process in this case was a contentious fight, involving multiple objections and delays that ultimately led to depositions being taken in the courtroom with the judge available to resolve disputes. We also note that Lindsay was forced to retain new trial counsel mid-litigation after her counsel was disbarred in an unrelated disciplinary matter. Her replacement trial counsel was involved in the case for only a few weeks before the defendants filed their summary judgment motion. Lindsay's appellate counsel does not appear to have been involved in the district court proceeding.

conspiracy claim failed to identify any disputed facts. Lindsay had also failed to submit an affidavit or any other evidence to controvert the facts underlying the motion for summary judgment. Lindsay attempted to remedy this shortcoming by filing a supplemental memorandum the day after the district court heard the motion. By the time Lindsay filed the supplemental memorandum, the district court had issued its written decision granting summary judgment on the civil conspiracy claim.[4]

¶11    Lindsay filed a motion for relief under rule 60(b) of the Utah Rules of Civil Procedure, arguing that the deficiencies in her opposition memorandum resulted from her attorney's excusable neglect. Specifically, she argued that her counsel suffered from a medical condition that impaired his ability to adequately respond to the motion for summary judgment. The district court conducted a hearing on Lindsay's rule 60(b) motion. At the hearing, the district court noted that it had interacted with Lindsay's counsel during the period of alleged impairment and "found him to be . . . a perfectly sound, able attorney." The district court concluded that Lindsay had not demonstrated excusable neglect under the totality of the circumstances and denied the rule 60(b) motion.

¶12    Lindsay appeals.

ISSUES AND STANDARDS OF REVIEW

¶13    Lindsay argues that the district court erred in concluding that O.G.'s adoption by the Walkers eliminated Lindsay's standing to seek grandparent visitation. "The issue of whether a party has standing is primarily a question of law, which we

---

4. The district court also granted summary judgment on Lindsay's other remaining claims. Those rulings are not at issue on appeal.

review for correctness." *R.P. v. K.S.W.*, 2014 UT App 38, ¶ 4, 320 P.3d 1084.

¶14    Lindsay also argues that the district court erred in denying her rule 60(b) motion for relief from summary judgment on her civil conspiracy claim. "We review a district court's denial of a rule 60(b) motion for relief from judgment for an abuse of discretion." *Robinson v. Baggett*, 2011 UT App 250, ¶ 13, 263 P.3d 411 (citation and internal quotation marks omitted).

ANALYSIS

I. Standing to Seek Grandparent Visitation

¶15    Lindsay argues that the district court erred when it concluded that O.G.'s adoption cut off Lindsay's standing to seek grandparent visitation. Lindsay contends that she "remains the grandmother of O.G." because Father was Lindsay's son and Father's "parental rights were not terminated before he passed away." Lindsay further argues that her standing to seek grandparent visitation survives O.G.'s adoption because Mother's relatives, and not strangers, adopted O.G.

¶16    Utah Code section 30-5-2(1) provides that "[g]randparents have standing to bring an action in district court by petition, requesting visitation in accordance with the provisions and requirements of this section." Utah Code Ann. § 30-5-2(1) (LexisNexis 2013). Lindsay appears to be correct that, for the purposes of statutory grandparent visitation, her legal status as O.G.'s grandparent survived Father's death.[5] The district court did not, however, dismiss Lindsay's petition because of Father's

_____

5. Utah Code section 30-5-2(2) identifies certain factors that may be relevant in determining a grandparent-rights petition, one of which is that "the petitioner's child, who is a parent of the grandchild, has died." Utah Code Ann. § 30-5-2(2)(e) (LexisNexis 2013).

death. Rather, the district court dismissed the petition because the Walkers had adopted O.G.

¶17 Adoption of a child by anyone other than a natural parent's spouse acts to terminate the natural parent's rights in the child. *Id.* § 78B-6-138 (2012). "A pre-existing parent of an adopted child is released from all parental duties toward and all responsibilities for the adopted child, including residual rights, and has no further rights with regard to that child," no later than "the time the final decree of adoption is entered." *Id.* § 78B-6-138(1). Once an adoption decree is entered, "the adoptive parent or parents and the child shall sustain the legal relationship of parent and child, and have all the rights and be subject to all the duties of that relationship." *Id.* § 78B-6-139. We have previously noted that the adoption statute "suggests that grandparent visitation cannot carry over into an adoption where all other rights of the natural family have been extinguished." *Kasper v. Nordfelt*, 815 P.2d 747, 750 (Utah Ct. App. 1991).

¶18 Since our observation in *Kasper v. Nordfelt*, the Utah Legislature has modified the grandparent visitation statute in a number of ways to strike a balance between the visitation rights of grandparents and the rights of adoptive parents. When we decided *Kasper* in 1991, the grandparent visitation statute did not address the effect of adoption on grandparent visitation rights. *See* Utah Code Ann. § 30-5-2 (Michie 1989) ("The district court may grant grandparents reasonable rights of visitation to grandchildren, if it is in the best interest of the grandchildren."). In 1998, the Legislature amended the statute to provide that adoption of a child "terminates all rights of a biological grandparent to petition for visitation." *Id.* § 30-5-2(3) (Lexis 1998).

¶19 In 2000, the Legislature amended the statute to create a presumption that an adoption terminated the grandparents' right to visitation, but the amendment allowed a grandparent to rebut the presumption with evidence that the child and grandparent had an established relationship and that continuing the relationship was in the best interest of the child. *See id.*

§ 30-5-2(4)(a) (Lexis Supp. 2000). The 2000 amendment also provided that the presumption did not affect "visitation rights of a grandparent that have been ordered by a court pursuant to this section, if the grandchild is adopted by the grandchild's stepparent." *Id.* § 30-5-2(4)(b).

¶20     In 2002, the Legislature eliminated the 2000 amendment's rebuttable presumption and replaced it with the statutory language at issue in this case: "The adoption of a grandchild by the grandchild's stepparent does not diminish or alter visitation rights previously ordered under this section." *Id.* § 30-5-2(3) (LexisNexis Supp. 2002); *see id.* (2013). This plain statutory language reveals that the Legislature has considered the effect of adoptions on grandparent visitation rights and decided that grandparent visitation can survive the grandchild's adoption only when (1) the grandchild's stepparent adopts the child and (2) the visitation was ordered prior to the adoption. Neither of those conditions exists here.[6]

¶21     O.G.'s adoption also results in Lindsay's inability to meet the statutory definition of a "grandparent." "'Grandparent' means a person whose child, either by blood, marriage, or adoption, is the parent of the grandchild." Utah Code Ann. § 30-5-1(3) (LexisNexis 2013). Because of O.G.'s adoption, when Lindsay filed her petition for visitation rights, Father was no longer O.G.'s legal parent. *See id.* § 78B-6-138 (2012); *cf. Chesonis v. Brown*, 2006 UT App 497, ¶ 6, 153 P.3d 796 ("The parental rights of their son having been surrendered, the Chesonises did

---

6. When we interpret statutory language, we presume that the Legislature is aware of our case law. *State v. Houston*, 2011 UT App 350, ¶ 12, 263 P.3d 1226. Accordingly, we presume that when the Legislature amended the grandparent visitation statute, it knew that this court interprets Utah Code sections 78B-6-138 and -139 as terminating, after an adoption, a grandparent's standing to seek visitation rights under Utah Code section 30-5-2.

not fit within the statutory definition of 'grandparent' and, thus, lacked standing to bring a petition for visitation."). Because Father was no longer O.G.'s legal parent, Lindsay was no longer a person "whose child . . . is the parent of the grandchild" within the statute's definition. *See Chesonis*, 2006 UT App 497, ¶¶ 5–6 (citation and internal quotation marks omitted).

¶22 Notwithstanding O.G.'s adoption, Lindsay argues that she possesses standing to seek grandparent visitation because O.G. was adopted by Mother's relatives. Lindsay relies heavily on the aforementioned *Kasper v. Nordfelt*, 815 P.2d 747 (Utah Ct. App. 1991), and particularly on its statement that grandparents may not seek visitation "where the rights of natural parents are terminated and the grandchildren are adopted by nonrelatives," *id.* at 750. Reasoning inversely, Lindsay argues that she *may* seek visitation because "[Father's] parental rights were never terminated because he died before the adoption occurred and O.G. was adopted by relatives."

¶23 Lindsay's reliance on *Kasper* is misplaced. *Kasper* does not stand for the proposition that Lindsay claims it does. *Kasper* identified a set of circumstances wherein grandparent visitation is not available, but *Kasper* did not hold that the inverse is true, i.e., that outside that set of circumstances, visitation is available. Indeed, *Kasper* did not consider whether the statute applies differently to relatives than to strangers. As noted above, we decided *Kasper* under an earlier version of Utah Code section 30-5-2 that did not expressly acknowledge the effect of adoption on grandparent visitation rights. *See* Utah Code Ann. § 30-5-2 (Michie 1989) ("The district court may grant grandparents reasonable rights of visitation to grandchildren, if it is in the best interest of the grandchildren."). The current version of the statute forecloses the avenue that Lindsay claims *Kasper* opened to grandparents of adopted children.

¶24 Lindsay also points out that, despite the adoption, the Grants retain their grandparental status vis-à-vis O.G. and Mother assumes the status of an adoptive aunt. Lindsay argues that this arrangement is distinguishable from the "anonymous

and confidential" adoption *Kasper* addressed. *See* 815 P.2d at 751. She suggests that grandparent visitation should be unavailable only when a nonrelative adoption gives the child "a completely fresh start." *See In re B.B.M.*, 514 N.W.2d 425, 429 (Iowa 1994). We recognize that from Lindsay's perspective, the result the statute dictates appears manifestly unfair; that she alone among the litigants finds herself excluded from O.G.'s life without a legal path to restore her relationship with a child she adores. And indeed, the Utah Legislature could have drawn the line that Lindsay advocates and created a statutory framework that would permit grandparent visitation rights to survive when a family member other than a stepparent adopts. But the Legislature did not. Our constitutional responsibility is not to redefine the line based upon competing considerations (even when those considerations may be compelling) but to interpret the statute as written.

¶25   We conclude that O.G.'s adoption vested parental rights to O.G. in the Walkers and necessarily terminated Father's parental rights. The termination of Father's rights means that Lindsay cannot meet the statutory definition of "grandparent" for purposes of Utah Code section 30-5-2. This situation also does not fall into the narrow circumstance in which the Legislature has permitted grandparent visitation rights to survive an adoption. The district court correctly concluded that Lindsay lacks standing to seek statutory grandparent visitation.

## II. Denial of Lindsay's Rule 60(b) Motion

¶26   Lindsay also argues that the district court abused its discretion in denying her rule 60(b) motion seeking relief from summary judgment on her civil conspiracy claim. *See* Utah R. Civ. P. 60(b). "Rule 60(b) affords a district court broad discretion to relieve a party from a final judgment due to mistake, inadvertence, surprise, or excusable neglect." *Harrison v. Thurston*, 2011 UT App 231, ¶ 7, 258 P.3d 665 (citations and internal quotation marks omitted). Lindsay argues that the district court entered summary judgment on her civil conspiracy claim because her opposition memorandum did not contain a

supporting affidavit, that the absence of that affidavit resulted from her trial attorney's medical condition, and that she promptly filed a supplemental memorandum correcting the deficiencies. Lindsay argues that these circumstances constitute excusable neglect and that the district court abused its discretion in denying her motion for relief.

¶27　Lindsay does not identify the nature or severity of her trial attorney's medical condition, nor does she explain how that condition prevented the preparation and filing of a rule-compliant opposition to summary judgment. Instead, she makes the conclusory assertion that her trial attorney "clearly was not competent to properly file an opposition to the motion for summary judgment." However, the district court rejected Lindsay's argument that her trial attorney was medically impaired, noting that the court had interacted with the attorney during the relevant time period and "found him to be . . . a perfectly sound, able attorney."[7] Lindsay has not demonstrated that the district court abused its discretion in determining that Lindsay's trial counsel's medical condition did not support a finding of excusable neglect.[8]

¶28　In her reply brief, Lindsay argues for the first time that she should be granted rule 60(b) relief not because of her trial counsel's medical condition but because she should not

---

7. The district court's interaction with Lindsay's trial attorney consisted of a telephone hearing on an extension request, which the district court described as "[not] the shortest phone call." At the hearing, Lindsay's trial counsel successfully argued for the requested extension over the objections of opposing counsel.

8. We note that the district court also indicated that it had reviewed Lindsay's supplemental memorandum and was "not convinced that considering the supplemental memorandum . . . would have necessarily changed the Court's analysis on summary judgment."

personally suffer the loss of her claim due to her trial attorney's failures. We do not consider this argument because it was raised for the first time in a reply brief. *See Allen v. Friel*, 2008 UT 56, ¶ 8, 194 P.3d 903.

## CONCLUSION

¶29 The district court correctly concluded that O.G.'s adoption extinguished Lindsay's standing to seek grandparent visitation. Lindsay has failed to demonstrate that the district court abused its broad discretion in denying her rule 60(b) motion for relief from summary judgment on her civil conspiracy claim. For these reasons, we affirm.

————————